[No. 14061.  Department One.  November 14, 1917.]

## JAMES A. BELCHER, *Appellant*, v. TACOMA EASTERN RAILROAD COMPANY, *Respondent*.[1]

CARRIERS—REGULATION—OVERCHARGES—POWERS OF PUBLIC SERVICE COMMISSION. The public service commission has jurisdiction to investigate a charge of discrimination growing out of the violation of the long and short haul provision, under the comprehensive provisions of Rem. Code, § 8626-91; since such a discriminatory charge is unreasonable because it is unlawful.

SAME—OVERCHARGES—ACTION TO RECOVER — LIMITATIONS — ESTOPPEL. Where a railroad company invoked the aid of the public service commission to cancel switching charges which were admitted to be unjust and discriminatory, and undertook with the commission to make a refund to all claimants, it cannot invoke the statute of limitations, Rem. Code, § 8626-91, requiring all claims for overcharges to be filed with the commission within two years from the time the cause of action accrues.

SAME—OVERCHARGES—ACTION TO RECOVER—LIMITATIONS—REVIVAL. In such case, the railroad's petition revives claims for overcharges that theretofore had been barred by lapse of time; since claims arising out of a violation of the long and short haul do not rest in tort, but in implied assumpsit.

SAME—OVERCHARGES—ACTION TO RECOVER—CONDITIONS PRECEDENT —STATUTES. It is a condition precedent to an action to recover overcharges that the public service commission determines the amount, under Rem. Code, § 8626-91, providing for such determination and that suit may be instituted therefor if the company does

[1]Reported in 168 Pac. 782.

not comply with the order for payment; hence an order of the public service commission does not furnish a sufficient basis for action where it does not designate the individual shippers entitled to recover nor fix the amount due to each.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered February 13, 1917, dismissing an action to recover overcharges on discriminatory switching charges, upon sustaining a demurrer to the complaint. Affirmed.

*G. C. Nolte* and *John E. Belcher*, for appellant.

*F. M. Dudley* and *F. M. Barkwill*, for respondent.

WEBSTER, J.—Appellant brought this action against respondent for the recovery of excess payments amounting to $7,874.04, arising out of the claim that respondent had charged appellant's assignor, the Tidewater Lumber Company, a higher rate, based upon a higher minimum load per car, for transporting its logs a lesser distance on the same line and in the same direction than it had charged the St. Paul & Tacoma Lumber Company, a competitor of the Tidewater Lumber Company, for performing a like and contemporaneous service. The essential allegations of the complaint are that, during the time in question, the respondent published and had in force certain local freight tariffs, quoting rates for the transportation of logs from certain named stations on its line to the city of Tacoma, at $1 per thousand feet, with a minimum of five thousand feet per car. These tariffs contained the following provision:

"The above rates will apply only from and to points named and only on logs being cut from St. Paul & Tacoma Lumber Company's lands by the North Coast Timber Company and consigned to the St. Paul & Tacoma Lumber Company's mills at Tacoma."

On December 6, 1915, the respondent, through its traffic manager, formally petitioned the public service commission for permission and authority to absorb and cancel certain

switching charges, amounting approximately to $6,500, which had accrued at Tacoma on logs consigned to the St. Paul & Tacoma Lumber Company from various points on respondent's line of railroad. It probably will be conducive to clearness to set forth at length the petition, a copy of which is attached to the complaint as an exhibit. It reads as follows:

"Chicago, Milwaukee & St. Paul Railway Company,
          "Traffic Manager.
                    "Seattle, Wash. Dec. 6, 1915.
"Washington Public Service Commission,          File B.
          "Olympia, Washington.

"Gentlemen: Permit me to formally present to your honorable (body) the subject of a long term dispute between the Milwaukee Company and the Tacoma Eastern RR on the one hand, with the St. Paul & Tacoma Lbr. Co. and the North Coast Timber Co. on the other hand, as to the propriety of certain charges for switching cars of logs originating on the Tacoma Eastern RR.

"Several weeks ago Mr. Burroughs discussed the subject in rather general terms with Honorable Commission(er) Spinning and Mr. Calderhead, Statistician, when they were in Seattle on other matters, and in conformity with suggestion made at that time it is now formally and in detail presented to the Commission.

"Prior to the acquisition of the Tacoma Eastern R. R. by the Chicago, Milwaukee & Puget Sound Ry., the Tacoma Eastern R. R. handled logs cut by the Cascade Timber Co., and their successor, the North Coast Timber Co., to the St. Paul & Tacoma Lbr. Co. at Tacoma, at a rate of $1 per 1,000 ft. minimum 5,000 ft. per car, this rate being published in T. E. R. R., G. F. D. No. 76, W. R. C. No. 7. The logs were delivered at the St. Paul & Tacoma Lumber Co.'s log dump via the Northern Pacific Railway, the service for movement over the N. P. Ry. being performed by the Tacoma Eastern R. R. engine under a contract between that line and the N. P. Ry. by which a charge of 50c per car accrued to the N. P. Ry. and was paid by the consignee or consignor.

"The delivery service over the N. P. Ry. tracks was discontinued, effective October 14th, 1910, with the cancellation

of the contract between the N. P. Ry. and the Tacoma Eastern R. R. effective on the same date the Chicago, Milwaukee & Puget Sound Ry. issued its tariff P. C. L. No. 399-A, W. R. C. No. 75, which tariff was later succeeded by C. M. & St. P. Ry. G. F. D. No. 11849-A, W. P. S. C. No. 81, carrying a charge of 50c per car for switching at Tacoma, the intent being to secure to the Chicago, Milwaukee & St. Paul Ry. and its predecessor, the same terminal switching rate as charged against the logs by the Northern Pacific Railway.

"The payment of this charge of 50c per car has been continually protested by consignee and consignor and the subject has been one of continuous argument and discussion between the parties involved up to the present time. In this period some 13,000 to 14,000 cars of logs have been moved and there is outstanding in Tacoma station uncollected account an amount in round figures, $6,500.

"The contract between the Tacoma Eastern R. R. and the North Coast Timber Co. (Cascade Timber Co.) provides 'the rates . . . shall not include the privilege of using such facilities as the party of the first part (Tac. Eastern R. R.) may have at the city of Tacoma for dumping logs.'

"The Tacoma Eastern R. R. was and is the owner of a certain piece of property in Tacoma located adjacent to Puyallup Waterway and the St. Paul & Tacoma Lbr. Co. log pond, immediately south of 11th Street South, on which there was constructed by the Chicago, Milwaukee & Puget Sound Ry. a piece of track connecting with other Chicago, Milwaukee & Puget Sound Ry. rails in the terminals on the Tacoma tide flats. This was commonly known as a Chicago, Milwaukee & Puget Sound Ry. track but being operated in making delivery of logs to the above referred to log dump on log shipments moving from the Tacoma Eastern R. R. stations, we cannot very well deny that the facility was more or less a joint proposition as between the Tacoma Eastern R. R. and the Chicago, Milwaukee & Puget Sound Ry. particularly in view of the fact that the log trains from off the Tacoma Eastern R. R. are actually moved by Tacoma Eastern R. R. motive power over the tracks on Tacoma Eastern R. R. property serving the log dump, and that, therefore, by virtue of the contract between the Tacoma Eastern R. R. and the North Coast Timber Co. (Cascade Timber Co.) the Tacoma Eastern R. R. is obligated to assume the expense of 50c

per car for operation over the rails owned by the Chicago, Milwaukee & Puget Sound Railway.

"In view of the conditions above recited we have reached the conclusion that the position maintained in this matter is untenable and that the Chicago, Milwaukee & Puget Sound Ry. published in its tariff P. C. L. No. 399-A and subsequent issues, a charge which should be absorbed by a regular published absorption tariff of the Tacoma Eastern R. R. for use of the tracks of the Chicago Milwaukee & Puget Sound Ry., reaching the log dump.

"The matter is one which cannot be settled except by presentation to and authority received from the public service commission and we are therefore presenting the matter for your consideration with the prayer that the Tacoma Eastern R. R. be given authority to absorb the tariff charges in P. C. L. No. 399-A and succeeding issues retro-actively to the date of original publication, thus allowing us to lawfully cancel from our records the uncollected amounts against the St. Paul & Tacoma Lbr. Co.—North Coast Timber Co., and in lieu thereof, under the retro-active tariff of the Tacoma Eastern R. R. allow that line to make the absorption.

"In connection with this matter there is also involved the matter of charges collected on logs from points on the Tacoma Eastern R. R. intermediate with the movement covered by Tacoma Eastern Railroad G. F. D. No. 76, and its succeeding issues on which charges at higher rates than those paid under the tariff which moved the logs of the North Coast Timber Co. (Cascade Timber Co.) to the St. Paul & Tacoma Lbr. Company. The question of discriminatory rates and overcharge under these other tariffs was brought to attention in the general talk on the matter with Messrs. Spinning and Calderhead and subsequent thereto an investigation was made developing the fact that in the period covered by the tariffs referred to there were moved only 205 cars of logs from and to various consignees and consignors.

"It will be the purpose of both the Tacoma Eastern R. R. and the Chicago, Milwaukee & St. Paul Ry. to remove any suggestion of discriminatory charges or violation of the long and short haul provision of the Public Service Commission Act, and as to charges in excess of those collectible under T. E. R. R. G. F. D. No. 76, and succeeding issues, refund

will be made by the Tacoma Eastern R. R. to all claimants down to the basis prescribed in that tariff.

"I am attaching hereto as exhibits a map of the terminal situation at Tacoma as involved in this matter, as well as copies of the tariffs mentioned and trust that the entire matter may have the early consideration of your Honorable Commission.          Yours truly,

"R. M. Calkins,
"(Traffic Manager)."

In conformity with this application, and after due consideration, the public service commission made findings of fact and entered two orders, the first to the effect that the respondent was authorized and directed to cancel the switching charges attempted to be collected from the St. Paul & Tacoma Lumber Company; and the second, in the following language:

"That the Tacoma Eastern Railroad Company, and its successors, the Chicago, Milwaukee & Puget Sound Railway Company and the Chicago, Milwaukee & St. Paul Railway Company do, within ninety days from the date of service of this order, refund to all claimants as their interests may appear, all sums collected by them in excess of the charges that would have accrued by applying the rate named in the Tacoma Eastern Railroad Company's tariff G. F. D. No. 76, and the succeeding issues thereof, on logs in carload lots, from all intermediate stations, Kirby to Midway, inclusive, including the Tanwax and Electron Branches, to Tacoma, Wash., and all stations east of Midway to Eatonville, inclusive, to Tacoma, Wash., the object of this order being to eliminate the restrictions of the application of this tariff, and succeeding issues thereof, making the rates also apply from intermediate stations to Tacoma.

"The reasons for this order being fully set out in the findings above, the same are hereby referred to and made a part of this order."

Between November 1, 1906, and September 30, 1907, the Tidewater Lumber Company made various shipments of logs from several points named in the above mentioned tariffs, upon which charges were collected at the rate of $1.30 per thousand feet, with a minimum load of six thousand feet per car. These

shipments were on the same line and moved in the same direction as the logs transported by the St. Paul & Tacoma Lumber Company, and were hauled a shorter distance than were the logs contemporaneously shipped by that company. Subsequent to the entry of the orders by the public service commission, appellant's assignor caused to be prepared and filed with the proper officer of the respondent its several claims for refund, aggregating the sum of $7,874.04, claiming that this amount represented the damages to the Tidewater Lumber Company, by reason of the preferential and discriminatory rate of $1 per thousand feet, with a minimum of five thousand feet per car, charged and collected from the St. Paul & Tacoma Lumber Company. The respondent availed itself of the permission to cancel the switching charges against the St. Paul & Tacoma Lumber Company, but refused to pay appellant's claims for overcharge, either in whole or in part. A demurrer was interposed to the complaint upon three grounds: (1) that the court was without jurisdiction of the subject-matter of the action; (2) that the suit had not been commenced within the time limited by law, and (3) that the complaint does not state facts sufficient to constitute a cause of action. From an order and judgment sustaining the demurrer and dismissing the action, upon the refusal of appellant to plead further, this appeal was taken.

In support of the judgment of the superior court, respondent insists that, under the provisions of § 91, ch. 117, Laws of 1911, p. 600 (Rem. Code, § 8626-91), known as the public service commission law, the commission is not clothed with jurisdiction to investigate a charge that a discriminatory rate has been exacted of a shipper or to order a refund of the overcharge in such cases, unless the rate was unreasonable in itself. It is said that there is a plain distinction between a rate which is inherently unreasonable and one which is merely discriminatory, and that the power of the commission is limited by the statute to dealing with cases involving unreasonable rates only. It may be granted that there was a

distinction at common law between an unreasonable rate and a discriminatory rate, but we think the very purpose of the public service commission law was to abolish such refinements and to provide, by a comprehensive statute, a certain and uniform procedure, applicable to all cases where an excessive, unlawful, illegal, discriminatory or unreasonable charge has been levied upon a shipper by any public service company or concern. We can conceive of no substantial reason why the legislature should empower the commission to entertain complaints arising out of unreasonable charges, strictly so called, and to authorize it to make orders requiring a public service company to pay the amount of the overcharge in such cases, but to withhold from it a similar jurisdiction to examine cases based upon the assertion that a discriminatory charge has been exacted. The skill and special training of the commission is as valuable an asset in dealing with one class of claims as the other and the wisdom of requiring all claims to be submitted to the commission is perfectly apparent. Before the court would be warranted in holding that a distinction such as has been suggested had been made by the legislature, the statute would have to be so clear and explicit as to leave no other reasonable interpretation of its provisions. Having in mind the evil sought to be remedied by the public service commission law, we consider it more reasonable to conclude that a discriminatory charge, growing out of a violation of the long and short haul provision in the constitution and in the act itself, is deemed by the lawmaking body to be unreasonable because it is unlawful and that the commission has plenary power in the first instance, to inquire into all complaints where a shipper alleges that he has been charged for a given service a sum in excess of that which, under the law, the public service company had the right to collect.

The argument of counsel is ingenious and entertaining but its vice lies in the fact that it does violence to the spirit and plain purpose of the statute, when considered as a whole. This conclusion finds strong support in our recent decision in

the case of *Hewitt Logging Co. v. Northern Pac. R. Co.*, 97 Wash. 597, 166 Pac. 1153. In that case, the plaintiff was seeking to recover for an overcharge resting in a violation of the long and short haul clause. In the course of the opinion, Judge Chadwick said:

"We may grant that the constitution declares the common law, but it does not follow that the legislature may not occupy its acknowledged field and define procedures and fix limitations upon the assertion of the right preserved. The 'Public Service Commission Law' does not assume to take away the common law right of action. The legislature has accepted the declaration of the constitution at its full worth and has, by a complete statute, endeavored to avoid all of the annoyances and collateral questions attending the assertion of the common law remedy, such as the reasonableness of the rate in and of itself, and its reasonableness when compared to another rate, the character and extent of the service, the attending circumstances, and the measure of recovery, which it is said was never defined at common law, *Pennsylvania R. Co. v. International Coal Co.*, 230 U. S. 184, and which it is said with equal gravity was as certain as a recovery can be upon an implied contract to pay money. *Sullivan v. Minneapolis & R. R. Co.*, 121 Minn. 488, 142 N. W. 3, 45 L. R. A. (N. S.) 612. To define procedure, to make a condition precedent, and to fix a limitation does not destroy the force of the constitution. On the contrary, a law so providing makes it efficient, certain, and uniform in its operation."

Later in the opinion, it is said:

"To repeat, the people wisely asserted the common law right to compel fairness of freight charges in their constitution, and left it to the legislature to define a procedure that would, while preserving the right, make recovery certain in amount and tend to reduce the volume of litigation. In so doing it worked no hardship on any one by making provision that a claim should be filed with the commission and within a certain time, it being nowhere asserted that the time limited is unreasonable."

The court concluded that the plaintiff's claim for the discriminatory overcharge was barred, because it had not been

filed with the public service commission within the two year period allowed by the public service commission law. It would be puerile to hold that the claim was barred for failure to present it to the commission, if that body would have had no authority to entertain it, had it been submitted to their consideration. This case answers respondent's contention adversely to the position taken by it and we shall therefore not pursue the question further.

It is next asserted that the claims of the Tidewater Lumber Company were barred by limitation at the time the respondent filed its petition with the public service commission and, for this reason, appellant should not be permitted to recover. Conceding that the claims were barred by limitation at the time this application was made, there are two reasons why respondent's position is untenable. First, it invoked the aid of the public service commission and sought permission to cancel the admittedly unjust switching charges attempted to be exacted of the St. Paul & Tacoma Lumber Company. It confessed at that time that the St. Paul & Tacoma Lumber Company had been a favored shipper and had operated under a preferential tariff in shipping its logs. As a means of inducing the commission to allow respondent to absorb the switching charges, it imposed upon itself an obligation "to remove any suggestion of discriminatory charges or violation of the long and short haul provision of the public service commission act; and as to charges in excess of those collected under T. E. R. R.-G. F. D. No. 76 and succeeding issues, refund will be made by the Tacoma Eastern R. R. to all claimants down to the basis prescribed in that tariff." This undertaking is broad and comprehensive. It contains no restrictions, conditions or limitations and it would seem to follow that respondent cannot now be heard to assert that appellant's claims were barred by lapse of time. It may have been that the commission was satisfied to allow the switching charges to be cancelled upon condition that all discriminatory

exactions were to be wiped out, while they would not have given their consent to reimbursing some shippers and interposing the bar of the statute against others. The very purpose of the petition was to bring about exact equality and to remove all suggestions of discrimination. If respondent desired to limit its liability to such claims as were then enforcible, it could easily have said so in appropriate words. In fact, as to all claims that were then alive and in full force, the respondent's liability was fixed by law independently of any undertaking on its part to make compensation.

Second, the petition was a recognition of all claims arising out of the discriminatory tariff under which the St. Paul & Tacoma Lumber Company had operated, and amounted to an express promise to pay all claims of that class and this, we think, revived the claims which theretofore had been barred by lapse of time. It is true, the promise was not made directly to the shippers, but it was made to the public service commission, which was exercising official functions in the interest of all persons engaging in shipping and was made for the express purpose of inviting an order which would redound to the benefit of appellant's assignor and to other shippers similarly situated. The petition therefore amounted to a new promise, supported by the moral obligation to pay, and revived the claims. *Arthur & Co. v. Burke*, 83 Wash. 690, 145 Pac. 974; *Muir v. Kane*, 55 Wash. 131, 104 Pac. 153, 26 L. R. A. (N. S.) 519; 17 R. C. L. § 270. Respondent contends that a new promise to pay will not remove the bar of the statute where the claim asserted is founded in tort, and with this abstract principle we have no quarrel. In this case, however, it has no application. Claims arising out of a violation of the long and short haul law do not rest in tort, but in implied contract, and an action to recover the illegal exactions sounds in assumpsit and not in tort. *Soderberg v. King County*, 15 Wash. 194, 45 Pac. 785, 55 Am. St. 878, 33 L. R. A. 670; *Moses v. Taylor*, 6 Mackey (17 D. C.) 255; Woodward, Quasi Contracts, § 270 *et seq.*

It is next insisted that, if it be assumed that the commission had jurisdiction to make the orders and that the petition amounted to a new promise to pay, the order entered by the commission does not comply with the statute and consequently is not the proper basis of an action to enforce collection. This contention seems to be meritorious. Section 91 of the public service commission law (Laws 1911, p. 600) provides as follows:

"When complaint has been made to the commission concerning the reasonableness of any rate, fare, toll, rental or charge for any service performed by any public service company, and the same has been investigated by the commission, and the commission shall determine that the public service company has charged an excessive or exorbitant amount for such service, the commission may order that the public service company pay to the complainant the amount of the overcharge so found, with interest from the date of the collection.

"If the public service company does not comply with the order for the payment of the overcharge within the time limited in such order, suit may be instituted in any court of competent jurisdiction to recover the same, and in such suit the findings and order of the commission shall be *prima facie* evidence of the facts therein stated. If the complainant shall prevail in such action, he shall be allowed a reasonable attorney's fee, to be fixed and collected as part of the costs of the suit. All complaints concerning overcharges shall be filed with the commission within two years from the time the cause of action accrues, and the petition for the enforcement of the order shall be filed in the court within one year from the date of the order of the commission." Rem. Code, § 8626-91.

The order entered by the commission in this case does not designate the individual shippers from whom the discriminatory exactions had been collected, nor does it ascertain or fix the amount due each. Section 91 of the act clearly contemplates that the commission must determine the amount of the overcharge in the first instance and its order constitutes the basis of the shipper's right of action in the superior court,

in the event the public service company fails or refuses to comply with the order as entered by the commission. Under the holding in *Hewitt Logging Co. v. Northern Pac. R. Co.,* *supra*, the appellant must first submit the claims to the public service commission and have the amount due determined by it and if, when this is done, the respondent refuses to comply with the order, institute an action in the superior court to enforce the collection of the amount found due. We deem it proper to say that the order of the commission constitutes the basis of appellant's right to apply to the public service commission within two years from the date of the order to have the amount of excess payments ascertained, and in the event the railroad company refuses to pay, appellant has the additional period of one year provided by the statute within which to commence an action in the superior court to enforce obedience to the order.

We conclude therefore, that upon the ground that the superior court did not have jurisdiction in the first instance to pass upon appellant's claims and to ascertain the amount due the Tidewater Lumber Company, the demurrer to the complaint was properly sustained and the judgment of the lower court is affirmed, but without prejudice to appellant's right to proceed in the collection of his demands in the method indicated in this opinion.

ELLIS, C. J., MORRIS, CHADWICK, and MAIN, JJ., concur.