[No. 15545.   *En Banc.*   March 22, 1920.]

THE STATE OF WASHINGTON, *on the Relation of Home
Telephone & Telegraph Company of Spokane,
Plaintiff*, v. THE SUPERIOR COURT FOR
SPOKANE COUNTY, *Respondent.*[1]

TELEGRAPHS AND TELEPHONES (5, 7)—OVER-CHARGES—RECOVERY—
JURISDICTION.  Where a telephone company put into effect and col-
lected a schedule of rates in excess of the rates fixed by its franchise,
before the public service commission had exercised its discretion or
taken any steps to terminate the franchise contract by authorizing
an increase of rates, the superior court has jurisdiction of an action
to recover the excess charges; and Rem. Code, § 8626-91, authorizing
the public service commission, upon complaint as to the "reasonable-
ness" of any rate or toll, to order an overcharge to be repaid, is not
applicable, since the franchise contract in force at the time was
violated and the reasonableness of the rate is not a factor.

Application filed in the supreme court September 17,
1919, for a writ of prohibition to prevent further pro-
ceedings by the superior court for Spokane county,
Hurn, J., in an action to recover excess telephone
charges, upon the overruling of objections to the juris-
diction.  Denied.

*Post, Russell & Higgins,* for plaintiff.

*Fred B. Morrill,* for respondent.

MITCHELL, J.—In 1905, the city of Spokane granted
to the Home Telephone & Telegraph Company, a cor-
poration, of Spokane, the petitioner herein, a franchise
to operate a telephone system, specifying the rates to
be charged for telephone service.  Pursuant to a pro-
vision contained in the franchise ordinance, the com-
pany duly filed a written acceptance of the ordinance
and franchise therein granted, since which time it has
been operating its telephone system in that city.  In

[1]Reported in 188 Pac. 404.

January, 1915, it filed with the public service commission a new schedule of rates and charges, increasing those provided for in the franchise. The public service commission took no action whatever upon receiving into its files the new schedule of rates; nor did the commission ever take any jurisdiction or control in the matter until, upon a hearing had, it made an order in April, 1919, putting into effect a new and higher schedule of rates than those provided for in the franchise. In the meantime, and after the filing of the new schedule of rates in 1915, the company refused to render telephone service at the rates fixed in the franchise, or at any rates less than the increased rates mentioned in its 1915 schedule. At the risk of being denied telephone service, certain patrons were compelled to pay, and did pay, the increased charges called for by the new schedule of 1915. In the year 1919, the assignee of those patrons brought an action in the superior court of Spokane county to recover from the company the excess amounts paid over and above the rates fixed in the franchise. In that action, the superior court having overruled the objection of the telephone company to the jurisdiction of the court, the telephone company has applied to this court for a writ of prohibition to arrest the proceedings of the superior court as being without jurisdiction to hear and determine the cause.

Notwithstanding some other matters contained in the pleadings, the only one proper to be considered here is simply the question of the jurisdiction of the superior court. It is contended by the petitioner, but disputed by the respondent, that the only remedy, if any, available to a claimant for an overcharge, under the facts existing here, according to provisions of the public service commission law, is to first present the claim to the public service commission for its order,

and if the order is favorable to the claimant and payment refused by the company, that then, and not until then, may an action to recover be had in court at the instance of the claimant.

In the case of *State ex rel. Ellertsen v. Home Tel. & Tel. Co.*, 102 Wash. 196, 172 Pac. 899, this court had under consideration this same franchise, and the relation thereto of the public service commission law as affecting the duties and obligations of the company to its patrons. While the exact question here presented was not in that case, it was there pertinently and clearly stated that the city of Spokane had the authority to fix in the franchise the telephone rates to be charged, and that, though the city no longer had any power, after the passage of the commission law of 1911, in regard to rates charged, still the rates already provided for in the franchise remained in effect until the public service commission had taken some action regarding them; and that the mere filing of a new schedule of rates was not sufficient to establish that schedule as a basis for charges for service, in view of the provisions of § 43 [Rem. Code, § 8626-43] of the commission law. Section 43 of the law provides for the continuation of the rights of the parties under the terms of an outstanding contract, with the right given and preserved under the sovereign police power to the commission to direct by order that such contracts shall be terminated as and when directed by such order.

It was decided in the *Ellertsen* case that the rate provision in the franchise was a contract, that § 43 of the law covered the obligation owing from the company, and that those citizens of the city desiring telephone service, being the beneficiaries of the rate provision of the franchise, became to that extent parties to the contract and direct recipients of the obligations of the telephone company. It is worthy of notice that,

in that case, this court sustained the trial court in its issuance of a writ of mandate compelling the company' to install telephone service at the rate provided for in the franchise, notwithstanding the filing of a new schedule of rates and the passage of the public service commission law, without any application to the commission by the citizens desiring the service; obviously, upon the strength of a contractual relation which put the matter beyond the jurisdiction of the commission until, by some hearing or order, it abrogated those contract rights and assumed control under the provision of the commission law.

Petitioner insists, nevertheless, that because the controversy concerns a claim for an overcharge, there is yet involved the question of whether or not the rate actually paid was reasonable, and that, by the terms of § 91 of the commission law, the matter must first be presented to the public service commission for an investigation, determination and order. For present purposes that portion of § 91 which needs to be noticed is as follows:

"When complaint has been made to the commission concerning the reasonableness of any rate, fare, toll, rental or charge for any service performed by any public service company, and the same has been investigated by the commission, and the commission shall determine that the public service company has charged an excessive or exorbitant amount for such service, the commission may order that the public service company pay to the complainant the amount of the overcharge so found, with interest from the date of collection." Rem. Code, § 8626-91.

It has to do with the reasonableness of a rate or charge. A commission given the power to determine the reasonableness of a rate is necessarily charged with the duty in exercising that power to use discretion and judgment. In all such cases, the manifest policy

of the law is to primarily trust in the judgment of commissioners specially fitted by experience and training, so that the parties interested, as well as the courts, if appeal is made thereto, shall have the advantage of their peculiar scientific skill and information. But that plan and the reason for it are foreign to the question of a fixed, determinate contract rate. What discretion or judgment could the commission possibly exercise in such a case? The reasonableness of the rate, in the present case, was fixed and consented to by all the parties at the time of granting the franchise under which the company was operating in rendering the service. If the public service commission should investigate, not for the purpose of making an order to terminate the contract, but in the isolated case of an individual's right, surely it could not determine a rate less than that fixed in the franchise; for, in a claim for an overcharge, no one would be asking it. On the other hand, in such case under the guise of exercising judgment and discretion the commission could not name a rate higher than that mentioned in the franchise; for this court has already said that franchise is a contract; and under § 43 of the law as construed in the *Ellertsen* case the commission has no jurisdiction until, by some affirmative action or order, the rule of the franchise as to rates is entirely superseded and the company relieved of all its contractual obligations. In other words, it is in this case as was said in that case: "The question presented here is not the question of the reasonableness of rates, but the question involves the contractual rate."

Petitioner relies largely upon the case of *Hewitt Logging Co. v. Northern Pac. R. Co.*, 97 Wash. 597, 166 Pac. 1153. A fair understanding of that case throws no light upon the present one. To extend language used in an opinion beyond the scope of the inquiry

wherein the decision was made does violence to a well understood rule; and the language in that case as to the general application of the law requiring claims to be presented first to the commission has no reference to the class of claims involved in the present action. The same may be said of that portion of the case of *Belcher v. Tacoma Eastern R. Co.*, 99 Wash. 34, 168 Pac. 782, relied on by the petitioner, relating to the same subject-matter. Both of those were freight-rate cases. The freight was hauled under the published tariffs of the railroad companies. The tariff of a railroad company is filed and published of its own motion; · and if, by the enforcement of such transportation rates, a shipper considers himself disadvantaged, there arises at once the question of the reasonableness of the charge, which, under the doctrine of those two cases, must first be presented to the commission. In the first of those cases, of the shipper's contention, it was said:

"A greater rate was charged than for a like service given to others between Mack, Washington, and Hoquiam, a greater distance on the same line and in the same direction."

So that there were involved the questions of rates, kind of service, and an alleged violation of the short and long haul provisions of the constitution and the public service commission law. In the opinion, the contention of the shipper that, to require a claim for overcharge to be first presented to the commission would work a denial of the common law right of action in such cases, as declared in art. XII, § 15, of the constitution, was decided adversely, for the reason the statute only defined procedure and fixed a limitation upon the assertion of the right preserved. Further, upon the subject it was said:

"The legislature has accepted the declaration of the constitution at its full worth and has, by a complete

statute, endeavored to avoid all of the annoyances and collateral questions attending the assertion of the common law remedy, such as the reasonableness of the rate in and of itself, and its reasonableness when compared to another rate, the character and extent of service, the attending circumstances, and the measure of recovery."

Thus the court discussed the different kinds of possible controversies concerning which it was stated the legislature had adopted a uniform procedure. But they all relate to transportation rates, and appeal for the solution thereof to the judgment of the commission according to the plan provided for by the legislature. That such was the scope of the opinion, is shown by language near the conclusion, viz.:

"To repeat, the people wisely asserted the common law right to compel fairness of freight charges in their constitution, and left it to the legislature to define a procedure that would, while preserving the right, make recovery certain in amount and tend to reduce the volume of litigation."

The same rule and principle was reaffirmed and followed in the *Belcher* case; but as already observed, those decisions are not applicable here. The writers of the opinions in the two other cases wrote or signed the *Ellertsen* case, which makes no reference to the two former cases, manifestly because of the difference in kind of the cases. In the present case, there is no question of discrimination, kind of service, reasonableness of rates or similar circumstances involved, but simply a question of contract.

In the pursuit of a remedy for an alleged violation of rights under a contract still in force, the public service commission not having assumed jurisdiction as provided in § 43 of the public service commission law at the date it is claimed those rights were violated,

the party injured had the right to apply to the courts for relief.

Authorities from other states, cited by petitioner, have been examined, but are not discussed here. We find in them no help to determine if the statutes of this state deprive one, under the facts of this case, of the right to resort to the court in the first instance, for relief, or impose upon the enforcement of that right any limitation whatever.

The application for a writ of prohibition is denied. All concur.