H. R. ELLISON and J. N. Ellison, d/b/a Ellison Bros. Oyster Co., Plaintiffs,

v.

RAYONIER INCORPORATED, a corporation, Defendant.

No. 2081.

United States District Court
W. D. Washington, S. D.

Sept. 30, 1957.

Lewis & Correa, Shelton, Wash., for plaintiff.

Holman, Mickelwait, Marion, Black & Perkins and DeForest Perkins, Seattle, Wash., B. Franklin Heuston, Shelton, Wash., for defendants.

BOLDT, District Judge.

In seventeen actions, of which the captioned case is typical, plaintiffs seek to recover damages for loss allegedly sustained by reason of water pollution resulting from the operation of defendant's pulp and cellulose mill at or near Shelton, Thurston County, Washington. Plaintiffs' properties include tidelands in the state waters of Puget Sound at varying distances up to several miles from defendant's plant from which an effluence of chemicals, unreclaimed wood products, and other waste materials is discharged into state waters of the Sound. The complaints allege the "wrongful" discharge of such effluence and that by tidal action it reaches and is deposited on oyster beds located on plaintiffs' tidelands resulting in deterioration and death of oysters in large quantities. Recovery is sought for damage by loss of profits in plaintiffs' oyster cultivation and harvesting operations already sustained and to be sustained in the future.

The complaints do not name the legal nature of the right of action on which recovery is sought but under the allegations of the complaints the asserted claims must sound either in trespass or nuisance. Arvidson v. Reynolds Metals Co., D.C., 125 F.Supp. 481; 9 Cir., 236 F.2d 224. Defendant's motions to dismiss raise two general contentions: (1) that the common law actions of trespass and nuisance based on water pollution damage have been abolished in the State of Washington by the Water Pollution Control Act, Chapter 216 Laws of 1945, as amended 1949 and 1955 (R.C.W. 90.48 et seq.); and (2) in any event, the Act referred to has vested primary jurisdiction to determine standards of actionable pollution of state waters in the Pollution

Control Commission provided for by the Act.[1]

The Act makes unlawful the discharge into state waters of any matter causing or tending to cause a condition of the water amounting to unreasonable pollution according to rules, regulations and standards determined by a commission created by R.C.W. 43.54.010 et seq. on the basis of such known and available technical, scientific information and opinion as the commission may deem pertinent. The policy section of the Act expressly provides that in setting water pollution rules, regulations and standards the commission shall consider and determine, among other things, the relative requirements and practical problems of various activities using or dependent upon water in categories including both plaintiffs' and defendant's commercial and industrial operations, all with regard to the industrial development of the state. Provisions of the Act as amended require permits for industrial and commercial disposal of solid or liquid waste material into waters of the state. The commission is required to issue permits for commercial and industrial disposal of waste material unless the commission finds that thereby the waters of the state will be unduly polluted in violation of the public policy declared in the Act. Commission hearings, appeals and various other procedures are provided for.

██ Right of action to recover damages for wrongful water pollution is well established in the common law recognized in Washington. Bales v. City of Tacoma, 172 Wash. 494, 20 P.2d 860; Bowman v. Helser, 143 Wash. 397, 255 P. 146; Sund v. Keating, 43 Wash.2d 36, 259 P.2d 1113. The Water Pollution Control Act contains no express declaration against continued recognition of such right of action. Neither the language of the Act nor the procedures provided for therein require or necessarily imply abolition of common law right of action.

"In testing the correctness of this proposition [abrogation by the Interstate Commerce Act of right of action for recovery of excessive freight charges] we concede that we must be guided by the principle that repeals by implication are not favored, and indeed, that a statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-exist-

---

1. Sections of the Act provide:

"90.48.010 *Policy enunciated.* It is the public policy of the state to maintain the highest possible standards to insure the purity of all waters of the state consistent with public health and public enjoyment thereof, the propagation and protection of wild life, birds, game, fish and other aquatic life, and the industrial development of the state, and to that end require the use of all known available and reasonable methods by industries and others to prevent and control the pollution of the waters of the state."

"90.48.030 *Powers of commission.* The commission shall have the jurisdiction to control and prevent the pollution of all waters of the state and shall enforce the provisions of this chapter. It may adopt rules, regulations, and standards consistent with known, available, and reasonable methods of preventing polution, and consistent with the public welfare, as it deems necessary to carry out the purposes of this chapter."

"90.48.070. *Determination of polluting substances, etc.* The commission shall determine what qualities and properties of water shall indicate a polluted condition of the waters of the state, which is or may be deleterious to the public health; to the prosecution of any industries; to the lawful occupation on which or in which any such waters may be lawfully used; to the carrying on of any agricultural or horticultural pursuit which may be injuriously affected; to the lawful conduct of any livestock industries; to the use of any such waters for domestic animals; to the lawful use of any such waters by the state or any person; to any fish or other aquatic life, migratory bird life, beneficial animal or vegetable life in such waters which may be destroyed, or to the growth or propagation thereof, which may be prevented or injuriously affected. Any such determination shall be filed of record in the office of the commission."

ing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory." Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U.S. 426, at pages 436–437, 27 S.Ct. 350, at page 354, 51 L.Ed. 553.

Washington law is in full agreement with the principles thus stated, by reason of which defendant's first contention is invalid and dismissal on such ground must be denied.

█ Defendant's second contention has more substance and raises questions difficult of solution. Plaintiffs brought the actions in this court invoking only diversity jurisdiction and Washington law is controlling on substantive issues. The Washington State Supreme Court has not had occasion to apply or interpret the Water Pollution Control Act and there are no Washington decisions directly concerned with the principle of primary administrative jurisdiction in any factual situation comparable to water pollution regulation and control. In these circumstances this court can only make a reasoned prophecy as to what content and effect, if any, the State Supreme Court will give to primary administrative jurisdiction as applied to the Act in question. The Court of Appeals for the Ninth Circuit recently has stated the duty of a federal court in such situation:

> "It is our limited duty to discern the substantive law of California on the issues in controversy and to apply it accordingly. Our task is not to innovate, but to imitate. Where the course of the law remains uncharted, as is the situation with several of the issues in the instant case, it is the duty of the Federal court to examine germane precedents and analogous decisions in California and to endeavor to ascertain from those decisions how the California courts would decide the case at bar. In the absence of direct authority, we must heed such guideposts as

the state courts have constructed, for even here true allegiance to the principle of Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, precludes unrestrained and independent determination in a diversity case." Young v. Aeroil Products Company, 9 Cir., 248 F.2d 185, 188.

The principle of primary administrative jurisdiction, while not so named therein, was early enunciated in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., supra. In considering administrative jurisdiction in relation to the instant case, language in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, quoted by the Washington Supreme Court with approval in State v. Dexter, 32 Wash.2d 551, 202 P.2d 906, 908, 13 A.L.R.2d 1081, is significant.

> "It is manifest from this review of our decisions that there has been a growing appreciation of public needs and of the necessity of finding ground for a rational compromise between individual rights and public welfare. The settlement and consequent contraction of the public domain, the pressure of a constantly increasing density of population, the interrelation of the activities of our people and the complexity of our economic interests, have inevitably led to an increased use of the organization of society in order to protect the very bases of individual opportunity. Where, in earlier days, it was thought that only the concerns of individuals or of classes were involved, and that those of the state itself were touched only remotely, it has later been found that the fundamental interests of the state are directly affected; and that the question is no longer merely that of one party to a contract as against another, but of the use of reasonable means to safeguard the economic structure upon which the good of all depends."

A late exposition of primary administrative jurisdiction is found in United States

v. Western Pac. R. Co., 352 U.S. 59, 77 S.Ct. 161, 165, 1 L.Ed.2d 126:

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361.

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. See Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. See Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576. The two factors are part of the same principle,

"'now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over, This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.' Id., 342 U.S. at pages 574–575, 72 S.Ct. at page 494.

"The doctrine of primary jurisdiction thus does 'more than prescribe the mere procedural time table of the lawsuit. It is a doctrine allocating the law-making power over certain aspects' of commercial relations. 'It transfers from court to agency the power to determine' some of the incidents of such relations."

The substance of the doctrine is that where by appropriate legislation an administrative agency is vested with jurisdiction under a regulatory scheme to set rules, regulations and standards of conduct and performance in technical, scientific and complicated matters of commercial and industrial activity, judicial process will not be exercised in damage claims involving determination of the same rules, regulations and standards without reference to administrative action thereon. This means that even though court jurisdiction to entertain a common law right of action exists, exercise thereof will be suspended pending

administrative determination of matters essential to the action as to which primary jurisdiction has been vested in an administrative agency by legislative action. Precise language to such effect is not always found in legislative acts to which courts have applied the primary jurisdiction principle.

 Water pollution in Washington, as generally elsewhere throughout the nation, has become a matter of gravest public and private concern. As indicated in Section 1 of the Act in question, important private and public interests in a wide variety of particulars are in seeming conflict and require consideration of ultimate state public policy in determining the extent and character of water pollution to be permitted in general and in specific cases. Such determination involves extremely technical, complicated and scientific problems which reasonably might be thought more suitable for resolution by administrative procedures than by the trial of particular damage claims the varying decisions of which provide no specific standards. Many factors of importance to the industrial development of the state could not or might not be considered in a private damage action based on water pollution. These considerations and various others are involved in determining whether the primary administrative jurisdiction rule is applicable to the Water Pollution Act and if so to what extent and effect. Final authoritative decision on these matters of vast public and private consequence eventually must come from the Washington Supreme Court. In the meantime, it is my judgment that the declarations of the Act, viewed as a whole, in the light of the serious questions of state public policy to be determined, strongly suggest, if they do not compel, the conclusion that, to paraphrase the Act itself, the Water Pollution Control Commission has been vested with primary jurisdiction to control and prevent undue pollution of all waters of the state and for that purpose to adopt rules, regulations and standards consistent with known available and reasonable methods of preventing pollution consistent with the many overlapping and conflicting private interests and ultimate public welfare.

Plaintiffs cite Baun v. Lumber and Sawmill Workers Union, Local No. 2740, 1955, 46 Wash.2d 645, 284 P.2d 275, as indicative of a contrary view by the Washington State Supreme Court, but that decision has only remote, if any, application to the question. It was there held that the federal Labor Management Relations Act with respect of the particular tort there involved, wholly unrelated in fact or principle to that asserted in these cases, (1) did not abolish state common law tort liability, or (2) expressly or impliedly constitute federal preemption of the field. The court held the conduct complained of not within the definition of unfair labor practices in the federal act. The Baun decision is some authority for the ruling herein made on defendant's first contention and inferentially may indicate Washington recognition of the primary administrative jurisdiction principle as plaintiffs emphatically state in their brief, but it is of little, if any assistance in determining the validity of defendant's second contention.

In the following cases, not cited in the briefs or argument, the Washington Supreme Court, and in one instance a federal court applying Washington law, has considered problems of concurrent or conflicting jurisdiction arising out of the interrelationship between courts on the one hand and various state administrative tribunals on the other. State ex rel. Goss v. Metaline Falls Light & Water Co., 80 Wash. 652, 141 P. 1142; Johnson v. Pacific Power & Light Co., 90 Wash. 492, 156 P. 530; Hewitt Logging Co. v. Northern Pac. R. Co., 97 Wash. 597, 166 P. 1153, 3 A.L.R. 198; State ex rel. Home Tel. & Tel. Co. of Spokane v. Superior Court, 110 Wash. 396, 188 P. 404; State ex rel. Tacoma Eastern R. Co. v. Public Serv. Comm., 112 Wash. 629, 192 P. 1079; Robinson v. Pacific Tel. & Tel. Co., 118 Wash. 318, 203 P. 1; State ex rel. Seattle & R. V. R. Co. v. Superior Court, 123 Wash. 116,

212 P. 259; Tacoma Grain Co. v. Northern Pac. R. Co., 123 Wash. 664, 213 P. 22; State ex rel. Dept. of Public Works v. Pacific Tel. & Tel. Co., 144 Wash. 383, 258 P. 313; DeStoop v. Department of Labor & Industries, 1 Wash.2d 340, 95 P.2d 1026; State ex rel. North Bend Stage Line v. Department of Transportation, 26 Wash.2d 485, 174 P.2d 516; Sunny Brook Farms v. Omdahl, 42 Wash. 2d 788, 259 P.2d 383; Northern Pac. Ry. Co. v. Sauk River Lumber Co., 9 Cir., 82 F.2d 519.

Some of these decisions recognize and apply the principle of primary administrative jurisdiction although not so naming it and in some instances referring to it as exhaustion of administrative remedies. These "guideposts" afford limited and conflicting direction to a destination yet to be announced. To my mind the cited cases do indicate that Washington law has and will continue to recognize the primary administrative jurisdiction principle and that it will be held applicable to the Water Pollution Control Act in the particular circumstances disclosed by the pleading, or want of pleading, in the present cases. The respectable, albeit not controlling, precedent set by the cited and other opinions of the United States Supreme Court, the comparatively recent expansion of administrative agencies, and the rapid and continuing development of the law relating thereto lends support to such conclusion.

In plaintiffs' complaints there is no reference to the State Water Pollution Control Commission or any action taken by it with respect to the pollution complained of. In the absence of contrary allegations it must be assumed that defendant's plant has been operated pursuant to Commission permit from the time required; that rules, regulations and standards for such operation have been established by the Commission which are not arbitrary, capricious or unreasonable; and that defendant has not discharged effluence into the waters of the Sound in violation of the standards prescribed. If so, the alleged discharge of waste from defendant's plant was not unlawful or unreasonable as determined by the Commission, and on the present pleadings recovery for damage resulting therefrom could not be granted on the basis of either trespass or nuisance.

To avoid the premature operation of limitation or res adjudicata on plaintiffs' claims, dismissal of the complaints will not be granted pending application for their amendment by allegations concerning administrative action warranting further judicial process in this court unless plaintiffs desire entry of judgment for the purpose of appeal.