[No. 21328. Department One. November 1, 1928.]
NORTH RIVER TRANSPORTATION COMPANY, *Appellant,* v. JOHN C. DENNEY *et al., Respondents.*[1]

*Theodore B. Bruener* and *Cleland & Clifford,* for appellant.

*The Attorney General* and *H. C. Brodie, Assistant,* for respondent Department of Public Works.

*W. A. Ackerman,* for respondents Stedman *et al.*

MITCHELL, J.—A highway, known as the North River road, extends in a general southeasterly direction

[1] Reported in 271 Pac. 589.

from Aberdeen. There is a point on the highway about twenty-five miles from Aberdeen, known as Saginaw Spur, at which point the highway crosses the logging railroad of the Saginaw Timber Company. The logging road and its branches run into the timber to the north, reaching logging camps conducted by the Saginaw Timber Company or its predecessor, commencing earlier than 1917. None of the camps were situated on the highway. The highway extends beyond Saginaw Spur southeasterly five miles to, and possibly a short distance beyond, Brooklyn, in Pacific county. Brooklyn consists of a postoffice and store and is surrounded by a number of farm settlements.

In 1917, Stedman and Weston commenced, and thereafter continued, to operate for hire motor propelled stages between Aberdeen and Brooklyn, to accommodate the passenger and parcel traffic between those and intermediate points on the highway, and to comply with a contract for the carrying of mail. The service accommodated those going to and from the logging camps north of Saginaw Spur. In 1920, one W. R. Smith commenced, and thereafter continued, to operate for hire motor propelled stages between Aberdeen and Saginaw Spur in the transportation of passengers and express between those and intermediate points. Traffic to and from the camps was let off or taken on at Saginaw Spur by both lines.

Upon the "transportation by motor vehicles" act of 1921 going into effect, the public service commission, as it was then called, upon the application of the parties, issued to each a certificate of public convenience and necessity, each being a "good faith" operator on January 15, 1921, as specified in the act. Certificate No. 142, issued to Stedman and Weston, authorized passenger and express service between Aberdeen and Brooklyn; while certificate No. 134,

issued to W. R. Smith, authorized passenger and express service between Aberdeen and Saginaw *Camp*. In 1924, W. R. Smith assigned his certificate to the North River Transportation Company, with the approval of the department. Each certificate holder has operated according to time and rate schedules on file with the department.

In the latter part of 1926, or the early part of 1927, the Saginaw Timber Company moved one of its camps to a territory accessible to the highway at or near Brooklyn, and it was contemplated that, from time to time, within a reasonably short time, other camps of the Saginaw Timber Company would be moved to points near and beyond Brooklyn. Thereupon the North River Transportation Company filed a new time schedule and tariff with the department of public works, providing for service and rates beyond Saginaw Spur to the location of the new logging camps. This extension of service was objected to by Stedman and Weston, and upon notice, pleadings and a hearing, the department of public works made and filed findings of fact and an order against the North River Transportation Company's extending its service. The order directed it to discontinue service, except in accord with the provisions of the certificate held by it for "operation between the fixed termini of Aberdeen and Saginaw Camp, which latter point has been fixed as Saginaw Spur." Thereafter, upon writ of review proceedings, the superior court of Thurston county made and entered judgment that the findings of fact and order of the department of public works "be and the same are hereby affirmed." The North River Transportation Company has appealed.

On behalf of the appellant, it is contended that the superior court erred in sustaining the findings and order of the department, because it proceeded upon

the theory that the court was without authority to set them aside, thus depriving appellant of its property without due process of law and in contravention of both the Federal and state constitutions. The record shows that, prior to the date of the judgment, the court did express the view suggested by this assign-. ment.

But it was not formal or binding, it was not reduced to an order or judgment, and we have uniformly held that an oral or informal opinion of a trial judge does not control a subsequent formal order or judgment upon the same subject.

In this case the trial court had before it the pleadings and all the testimony introduced on the hearing before the department, as the law requires. The only formal or binding expression by the court in the record is the judgment. After reciting that the matter came on regularly for hearing on the return of the department to the writ of review, all parties being present by their attorneys, and the court having duly considered the return, heard arguments of counsel and considered their briefs and being advised in the premises, it was ordered that the findings and order of the department "be and the same are hereby affirmed." There was nothing in the procedure that denied due process of law to appellant.

The logging camps furnished, and continue to furnish, most of the patronage to these transportation lines; and the designation of the outer terminus in the certificate to the appellant and its predecessor as "Saginaw Camp," rather than "Saginaw Spur," presents the principal controversy in the case. Appellant contends that the words "Saginaw Camp" are used in a "generic" sense and mean the camps of the Saginaw Timber Company, although they may be moved from time to time an appreciable distance beyond Saginaw Spur.

The use of the word "camp," while inappropriate, misled no one. The holder of the certificate knew it was never intended by the department that a fixed terminus over a regular route, as provided by statute, should in this case be placed miles away from a public highway, in the woods and on private property. For transportation purposes the words "camp" and "spur" meant the same thing. Appellant's predecessor, Smith, so understood it, as he testified. He never transported passengers or express beyond the spur. He testified that he understood that was the southeasterly terminus of his route, and, upon assigning his certificate to the appellant, its manager who made the deal was so advised. Thereafter the appellant made no pretense of transportation beyond the spur, until after the timber company moved one of its camps to Brooklyn. The evidence in the case, including written exhibits on behalf of both transportation lines, shows that the words "camp" and "spur" were used interchangeably, and in the oral testimony that point was sometimes spoken of as the Saginaw Crossing. The parties themselves, through all the years, have given a meaning to the words "Saginaw Camp" as being the equivalent of "Saginaw Spur" as the outer terminus of the certificate held by the appellant.

The statute, Rem. Comp. Stat., § 6387, speaks of operating "over any *public highway* in this state between fixed termini or over a regular route." The termini must be fixed, not ambulatory, and the route a regular one, not changeable.

In our opinion, the findings and order of the department and the judgment of the superior court were right.

Affirmed.

FULLERTON, C. J., TOLMAN, HOLCOMB, and BEALS, JJ., concur.