[No. 24466.  *En Banc.*  December 15, 1933.]

S & S Auto Freight, *Appellant,* v. The Department of Public Works *et al., Respondents.*[1]

*Yantis & Brodie,* for appellant.
*Cleland & Clifford,* for respondents.

Holcomb, J.—This appeal is from the judgment in the court below affirming an order of the department of public works which denied appellant the right to continue auto freight service between Seattle and certain points near the town of Monroe. The controversy

[1]Reported in 27 P. (2d) 1098.

involves territory north and west of the town of Monroe proper, including points known as Lettuce Farm, Logue and Son's Store, Woodruff, Snohomish County Poor Farm, Park Place, and the State Reformatory. The S & S Auto Freight, a corporation, appellant, will be mentioned only as appellant, and Snohomish Auto Freight Company, Inc., a corporation, will be referred to as if the only respondent herein.

The record of the department brought before the court below, and before this court, contains certified copies of each and every order and certificate of public convenience and necessity issued by it, between November 1, 1921, and the date of the hearing before the department in the present case, with respect to the rights of respondent and appellant to render freight service by motor vehicles over the highways between Seattle, Everett, Snohomish, Monroe, Index, Skykomish, and intermediate points. There is also a complete abstract of title of respondent to the certificate rights under which it is now operating.

After a very complete hearing before the department, with the production of witnesses and much documentary evidence, the department found:

"These proceedings are the result of a dispute between two auto transportation companies as to their respective rights.

"On and prior to August 29, 1927, Snohomish Auto Freight Company, Inc., was the holder of certificate No. 290, which authorized service between Everett and points east of Monroe as far as Skykomish, between Seattle and points east of Monroe as far as Skykomish, and between Seattle and Snohomish, and prohibited any further service.

"At the same time, the S & S Auto Freight was the holder of certificate No. 353, which authorized service between Seattle and Redmond, Tolt, Carnation, Stillwater, Duvall, and intermediate points over specified routes.

"Independent Truck Company was then the holder of certificate No. 96, which authorized service between Everett and Tolt via Snohomish, Monroe and Duvall.

"On or about August 19, 1927, the three companies joined in an application to the department reading in part as follows:

" 'The Independent Truck Company is desirous of transferring all of the rights now existing under said Certificate No. 96 between Everett and Tolt, Washington to the Snohomish Auto Freight, Inc., owner of Certificate No. 290, and the S & S Auto Freight, owner of Certificate No. 353, that portion of said rights between Everett and Monroe going to the Snohomish Auto Freight Company, Inc., under its Certificate No. 290; that portion of its rights between Monroe and Tolt and between Seattle and Monroe going to the S & S Auto Freight under its Certificate No. 358.'

"The application then proceeded to stipulate the various limitations that should be written into the respective certificates.

"On August 29, 1927, the department entered its Order M. V. No. 2135 granting the application and amending the certificates in accordance with the stipulations. The certificate of Snohomish Auto Freight, Inc., was amended to authorize service between Seattle and Skykomish via Monroe and named points and between Everett and Skykomish via Monroe and named points, with a limitation prohibiting service between Seattle and Monroe. The certificate of S & S Auto Freight was amended to authorize service between Seattle and Monroe via Bothell and Duvall, and between Seattle and Tolt via both Bothell and Kirkland, with immaterial limitations.

"The present dispute is over the right to furnish service to the district immediately west of the city limits of Monroe. Snohomish Auto Freight Company contends that the word 'Monroe' was intended and should be construed to mean the incorporated city of Monroe, and in support thereof points out that any other construction renders indefinite its right to furnish service to points between Snohomish and Monroe. It also points out that the S & S accepts that construc-

tion so far as concerns service to the north and east of the city limits. S & S Company contends that the word 'Monroe' should be construed to mean the community commonly known as Monroe and that the incorporated city and certain adjacent territory, including the district in question, is a social and economic unit. S & S Company also claims that the parties themselves have by their actions construed the word in favor of the S & S, in that the S & S has at all times since August 29, 1927, asserted its right to serve the district and has served it, while the Snohomish Company never claimed any such right until about two years ago.

"It is conceded by both parties that it was the intention of the parties and of the department when it entered Order M. V. No. 2135 that the Snohomish Auto Freight should have the east and west rights formerly held by the Independent Truck Company and that the S & S should have the north and south rights. Thus it appears that the Snohomish Company acquired the right to render service between Snohomish and Monroe and all intermediate points with only a limitation against handling freight between Seattle and Monroe; all prior limitations in the certificate of the Snohomish Company were eliminated by Order M. V. No. 2135. The present certificate of the S & S authorizes service north 'to Monroe' only.

"In 1929 the Snohomish Company was granted a certificate authorizing service between Snohomish and Monroe over the Roosevelt Road. This certificate authorizes the giving of local service to intermediate points on that highway. Since the date of that certificate the Snohomish Company has given daily service between Monroe and Snohomish and all intermediate points on both routes. It has on file in this department tariffs naming rates to and from some of these intermediate points. The S & S Company on the other hand has never filed with this department any tariffs naming rates to or from these intermediate points although it has made unscheduled trips to them from time to time.

"We are of the opinion and find that regular de-

pendable service is rendered under the certificate of the Snohomish Auto Freight between Snohomish and Monroe and all intermediate points and that there is no necessity for the overlapping of service proposed by the S & S Company. The terminus named in the certificate of the S & S is Monroe and this does not authorize it to extend its service either east or west of the corporate limits of Monroe. All intermediate points between the city limits of Monroe and Snohomish are territory served under the department's certificate held by the Snohomish Auto Freight.''

Upon these findings, the department ordered that appellant cease and desist from furnishing motor freight service in the district west of the city limits of Monroe, and, in particular, cease and desist from furnishing freight service between Seattle and the Washington State Reformatory, Park Place, Woodruff, F. W. Logue and Son Store and Frye's Lettuce Farm.

Both parties agree that it is unnecessary on this appeal to go back of the application for the transfer and division of the rights of the Independent Truck Company to appellant and respondent, which application to the department is dated August 11, 1927, subscribed by both appellant and respondent, and the order ratifying the same was made on August 29, 1927. It is also admitted that appellant never had filed with the department any tariff, or time schedule, naming rates and points in the territory intermediate between Snohomish and Monroe, which territory they now claim the right to serve. Such tariff and time schedule is required by Rem. Rev. Stat., § 10354, and the rules in pursuance thereof, of the department.

Prior to the entry of the department's order, No. 2135, granting the application and amending the certificates of appellant and respondent, as shown in the department's findings, the Independent Truck Com-

pany and respondent both operated east from Seattle over the highway between Snohomish and Monroe. The Independent Truck Company was authorized to render local service between Snohomish and Monroe and intermediate points, and respondent had a limitation on its certificate prohibiting the doing of such local business.

The parties to this appeal agree that the intent of the application referred to was that respondent should succeed to the east and west business of the Independent Truck Company between Snohomish and Monroe, and appellant should succeed to the north and south business of the Independent Truck Company. A map was attached to the joint application made by appellant and respondent, which is in the record, and which showed the location of the territory in question and the permits under which the Independent Truck Company, appellant, and respondent had theretofore operated. It was also recited in the joint application that the transfer of the rights from the Independent Truck Company to respondent would remove the then existing limitations upon the certificate of respondent prohibiting all local service by that carrier between Everett and Monroe and all intermediate points, by reason of the acquisition of this territory which had theretofore been served by the Independent Truck Company. The Independent Truck Company theretofore had a certificate authorizing it to render freight service between Everett and Tolt, Washington, via Snohomish, Monroe and Duvall, and points intermediate.

Pursuant to the filing of that joint application and the order numbered 2135, a new certificate, No. 290, was issued to respondent. This certificate eliminates the three limitations upon the old certificate No. 290, as recited upon it, which limitations referred specific-

ally, among others, to the territory intermediate between Snohomish and Monroe. As a part of the joint application made at that time by appellant and respondent, they adopted the then existing tariff filings of the Independent Truck Company applicable to the certificate rights acquired by the division between them. Since the acquisition of the right to serve the points and territory between Snohomish and Monroe, respondent has continuously given such service and published and maintained two scheduled trips daily.

A reference to the maps in the record discloses that, under their certificates and actual acquisition of the rights of the Independent Truck Company, according to the routes designated, they brought respondent into Monroe from the west and appellant from the south; their respective lines diverged at Woodinville on the east side, at the north end, of Lake Washington, and pursued entirely different routes therefrom.

Rem. Rev. Stat., § 6387, among other things, prescribes:

"The words 'between fixed termini or over a regular route,' when used in this act, mean the termini or route between or over which any auto transportation company usually or ordinarily operates any motor-propelled vehicle, even though there may be departures from said termini or route, whether such departures be periodic or irregular. Whether or not any motor-propelled vehicle is operated by any auto transportation company 'between fixed termini or over a regular route' within the meaning of this act shall be a question of fact and the finding of the 'commission' thereon shall be final and shall not be subject to review."

■■ Appellant vigorously contends that the order of the department is arbitrary, unreasonable and unlawful and not conclusive on this court. To sustain its

contention, it cites *Chelan Transfer Co. v. Foote,* 130 Wash. 511, 228 Pac. 297, to the effect that:

"A terminus does not have to be an incorporated town nor is it so circumscribed in its boundaries that the holder of the certificate of convenience and necessity must run his motor vehicle up to a designated hitching-post."

and *State ex rel. United Auto Transportation Co. v. Department of Public Works,* 119 Wash. 381, 206 Pac. 21, and *North River Transportation Co. v. Denney,* 149 Wash. 489, 271 Pac. 589.

The quotation from the *Foote* case, *supra,* referred to a very vague and indefinite territory, not an incorporated town, but merely an agricultural community which could not be definitely defined. It is not in point. Neither are the other cases cited upon their peculiar facts.

It is obvious that, if the theory of appellant be accepted, the boundaries of Monroe would be extended to the westward only, as a terminus. The east and west highway through Monroe runs many miles from that city, both east and west, and yet the only points which appellant seeks to serve outside the corporate limits of Monroe are those to the west, between that town and Snohomish, and plainly within the certificate rights of respondent as agreed to by the parties in acquiring the certificate rights of the Independent Truck Company.

It is generally to be considered that what constitutes the "termini" under our motor vehicle transportation act is a question of fact to be determined by the department, and its finding, in the absence of arbitrary, capricious and unreasonable conduct, is final. It is also manifest by the findings of the department that it was not intended either by it, or the parties, that the certificate rights of appellant should extend farther

than the town of Monroe on the north; that the other points in the territory north and west of Monroe should belong to respondent. It is unimportant that the state reformatory has been located by law "at Monroe," and recognized by statute as being so located (Chap. 212, Laws 1927, p. 323, Rem. Rev. Stat., § 10280-1). The state penitentiary was also long ago located as "at Walla Walla," and generally so recognized in all subsequent legislation. However, it is not *in* but outside Walla Walla, and ships and receives much freight and express.

In a case arising under the motor vehicle transportion act, *State ex rel. United Auto Transportation Co. v. Department of Public Works,* 129 Wash. 5, 223 Pac. 1048, we said:

"We are not authorized to try *de novo* the facts in such cases as this. We have held that the findings of the department will not be disturbed unless they show evidence of arbitrariness and a disregard of the material rights of the parties to the controversy. *State ex rel. B. & M. Auto Freight v. Department of Public Works,* 124 Wash. 234, 214 Pac. 164, and cases there cited. There is nothing in this case to indicate that the department has acted arbitrarily or that it has not considered the matters involved in an effort to be fair to the contestants. The business of the department is to determine the facts, and it is our business to determine whether it has acted arbitrarily or in a manner not calculated to lead it to honest conclusions."

Cf. *In re Stolting,* 131 Wash. 392, 230 Pac. 405; *Northern Pacific Railway Co. v. Department of Public Works,* 144 Wash. 47, 256 Pac. 333; *State ex rel. Byram v. Department of Public Works,* 144 Wash. 219, 257 Pac. 634.

An examination of the record shows that there is nothing whatever which would tend in the slightest degree to show arbitrariness and a disregard of the

material rights of the parties to this controversy, as indicated in the *United Auto Transportation Co.* case, *supra.* In fact, the official records of the department and the documentary evidence, made in part by appellant itself, is against the contention of appellant.

The presumption is that the department acted reasonably and lawfully, and unless the contrary be made clearly to appear, its findings cannot be disturbed. See *State ex rel. Great Northern Railway Co. v. Public Service Commission,* 81 Wash. 275, 142 Pac. 684; *State ex rel. Tacoma Eastern Railroad Co. v. Northern Pacific Railway Co.,* 104 Wash. 405, 176 Pac. 539; *State ex rel. Seattle v. Public Service Commission,* 114 Wash. 646, 195 Pac. 1015.

The findings of the department and of the lower court, together with the conclusions and judgment of the lower court, are amply sustained by competent evidence.

Affirmed.

BEALS, C. J., MAIN, MITCHELL, GERAGHTY, STEINERT, MILLARD, and TOLMAN, JJ., concur.

BLAKE, J. (dissenting)—I dissent. I think for all practical purposes the reformatory is located "at Monroe"—the appellant's terminus. It is recognized to be so located by law, ch. 212, Laws of 1927, p. 323, Rem. Rev. Stat., § 10280-1.