[No. 29914. Department One. November 22, 1946.]

THE STATE OF WASHINGTON, *on the Relation of North Bend Stage Line, Inc., et al., Appellants,* v. THE DEPARTMENT OF TRANSPORTATION *et al., Respondents.*[1]

*Emory & Howe,* for appellants.

*The Attorney General, Boris B. Kramer* and *Frederick J. Lordan, Assistants,* for respondent department of transportation.

*Macbride & Matthews* and *Thomas J. Hanify,* for respondent Washington Motor Coach Company, Inc.

[1]Reported in 174 P. (2d) 516.

SCHWELLENBACH, J.—This is an appeal from a judgment of the superior court for Thurston county, dismissing a petition for a writ of review and affirming an order of the department of transportation sustaining a demurrer of the Washington Motor Coach Company to the complaint of the appellants and, the complainants having elected not to plead further, dismissing the complaint.

The appellants had filed a petition and complaint with the department of public service, alleging that the North Bend Stage Line, Inc., is the owner of certificate of public convenience and necessity No. 100, authorizing the giving of passenger and express service as follows:

" 'Between:  Seattle       and North Bend, Washington, via Redmond, Happy Valley and Fall City, via Renton, Issaquah and Fall City and via Lake Washington Pontoon Bridge and Relocated State Road No. 2;

North Bend and Bridge No. 2 located on Sunset Highway approximately nine miles east of North Bend;

Fall City     and Tolt (Carnation), Washington;

North Bend and North Bend Lumber Company's Camp 15, Washington.' "

That Evergreen Trails, Inc., is the owner of certificate No. 185, authorizing the giving of service as follows:

" 'Passenger and Express Service

Between:  Kirkland      and Monohan, Washington, via Redmond, the route between Kirkland and Redmond to be both via the old highway and the new paved highway;

Passenger Service

Between:  Redmond       and Silver Logging Co. Camp, Washington.' "

That Washington Motor Coach Company, Inc., is the owner of certificate No. 400, authorizing the giving of passenger and express service between certain termini and over certain routes, among which are between:

"(a) 'Seattle, Washington, and all of the points above named and the territory served under Certificate No. 400 on February 6, 1928—service between Cle Elum and Seattle to be via State Highway No. 2 (Sunset Highway) through Easton, North Bend, Fall City and Redmond, and thence via Kirkland and

the Lake Washington ferries and/or Juanita Beach, Washington; and Lake Washington Toll Bridge and relocation of State Road No. 2 between Seattle and North Bend; and via the north end of Lake Washington, State Road No. 2-A through Kirkland to its intersection with relocated State Road No. 2, thence via Issaquah, Fall City and North Bend'; and

(b) 'Seattle and Seattle and intermediate points via circular route around Lake Washington via Kenmore Road, Kenmore-Lake Park Road or Wayne, thence over State Road No. 2-A through Juanita Junction, Kirkland, Houghton and Bellevue to its junction with 108th Street S. E., thence on 108th Street S. E. to its junction with relocated State Road No. 2, thence via relocated State Road No. 2 over Lake Washington Toll Bridge.' "

That, under its certificate No. 100, North Bend Stage Line has, since 1927, furnished adequate passenger service between Redmond and Seattle; that, under certificate No. 185, Evergreen Trails and its predecessor have, since 1921, furnished adequate passenger service between Kirkland and Redmond and intermediate points, connecting with Seattle via the Lake Washington ferry system and also with the circular route around-the-lake service of the Washington Motor Coach Company.

That, upon the opening to traffic of the Lake Washington toll bridge in 1940, the motor coach company was given the right by the department to travel between Seattle and North Bend over Lake Washington toll bridge and relocated state road No. 2; that, prior to that time, the motor coach company had been operating approximately seven round trips a day from points in eastern Washington on its certificate to Seattle via North Bend, Fall City, Redmond, Kirkland, and the north end of Lake Washington to Seattle; that, on being granted the alternate route over the toll bridge, the motor coach company reduced its trips from eastern Washington points via Redmond and Kirkland around the north end of the lake to Seattle to one and one-half round trips a day, routing the remainder of its runs over relocated state road No. 2 and the toll bridge; that, on or about August 23, 1941, the motor coach company was given the right by the department to give service between Seattle and Seattle and intermediate points via a circular route around Lake Wash-

ington through Juanita junction and Kirkland (see sub-paragraph (b) describing the route granted); that the company had never, prior to the filing of the time schedules and tariffs mentioned later in the complaint, furnished any passenger service between Redmond and Seattle save as a part of its through operation between Seattle and points in eastern Washington or turn-around service between such points.

That, in certain hearings then pending before the department, the motor coach company made application for the extension of its certificate No. 400 so as to authorize the giving of service between Seattle and eastern Washington points over a route between Redmond and Seattle via Lakeside Center, Bellevue, and the Lake Washington bridge; that, at the hearing, North Bend Stage Line made application for authority to give service between Seattle, North Bend, and intermediate points on its certificate via Redmond, Lakeside Center, Bellevue, and the Lake Washington bridge; that, at the hearing, Evergreen Trails also applied to have its certificate extended to authorize the giving of service between Redmond and Seattle via the same route; that the consolidated hearings came on for consideration before the department on February 9, 1945, and that the cases of all petitioners were substantially concluded when they were postponed to a date to be set by the department in the future; that, on March 6, 1945, the motor coach company filed with the department its time schedule and its local passenger tariff No. 119, to become effective March 7, 1945; and that, on that date, and ever since, the motor coach company has rendered turn-around passenger and express service between Redmond and Seattle via Kirkland, Houghton, Bellevue, Beaux Arts Junction, Toll Plaza, and Seattle.

The petitioners alleged that the operations by the motor coach company under such schedules and tariffs were unlawful and in violation of the certificate rights of the petitioners and did, and would, continue to result in irreparable damage and injury to them; that the respects in which the operations were illegal were as follows:   (a) The Washington Motor Coach Company, under its certificate No. 400, had

no right to carry passengers between Redmond and points lying between Redmond and Kirkland to Seattle save as a part of its through business between Seattle and eastern Washington points; (b) that the motor coach company had theretofore abandoned and transferred to the predecessor of Evergreen Trails the right to carry passengers between Redmond and intermediate points between Redmond and Kirkland to and from Seattle; (c) that the giving of the turn-around service between Redmond and intermediate points between Redmond and Kirkland and Seattle by the motor coach company constitutes the giving of service already given by both petitioners under their respective certificates; (d) that the motor coach company's certificate No. 400 only authorized the carriage of passengers between Redmond and Seattle as a part of its through run via Kirkland and the Lake Washington ferries and Juanita Beach, and that it could not utilize the circular route around Lake Washington through state road No. 2-A via Houghton, Bellevue, and the toll bridge, to engage in the carriage of passengers originating at, or destined to, Redmond and points between Redmond and Kirkland.

The petitioners prayed for a hearing before the department and asked that the Washington Motor Coach Company be compelled to discontinue the illegal practices complained of.

The Washington Motor Coach Company moved to strike certain portions of the petition and complaint, and demurred to it. The department sustained the demurrer and later dismissed the complaint. The complainants then petitioned the superior court for Thurston county for a writ of review of the action of the department, setting out the same allegations, which was granted. After a hearing before the court, the order of the department was affirmed, and the petition for a writ of review dismissed.

We are first met with the question as to whether or not the department had jurisdiction to hear the matter.

Rem. Rev. Stat., § 10422 [P.P.C. § 428-11], provides in part:

"Provided, further, that when two or more public service corporations (meaning to exclude municipal and other public corporations) are engaged in competition in any locality or localities in the state, either may make complaint against the other or others that the rates, charges, rules, regulations or practices of such other or others with or in respect to which the complainant is in competition, are unreasonable, unremunerative, discriminatory, illegal, unfair or intending or tending to oppress the complainant, to stifle competition, or to create or encourage the creation of monopoly, and upon such complaint or upon complaint of the commission upon its own motion, the commission shall have power, after notice and hearing as in other cases, to, by its order, subject to appeal as in other cases, correct the abuse complained of by establishing such uniform rates, charges, rules, regulations or practices in lieu of those complained of, to be observed by all of such competing public service corporations in the locality or localities specified as shall be found reasonable, remunerative, nondiscriminatory, legal, and fair or tending to prevent oppression or monopoly or to encourage competition, and upon any such hearing it shall be proper for the commission to take into consideration the rates, charges, rules, regulations and practices of the public service corporation or corporations complained of in any other locality or localities in the state.

"All matters upon which complaint may be founded may be joined in one hearing, and no motion shall be entertained against a complaint for misjoinder of complaints or grievances or misjoinder of parties; and in any review of the courts of orders of the commission the same rules shall apply and pertain with regard to the joinder of complaints and parties as herein provided: Provided, all grievances to be inquired into shall be plainly set forth in the complaint. No complaint shall be dismissed because of the absence of direct damage to the complainant.

"Upon the filing of a complaint, the commission shall cause a copy thereof to be served upon the person or corporation complained of, which shall be accompanied by a notice fixing the time when and place where a hearing will be had upon such complaint. The time fixed for such hearing shall not be less than ten days after the date of the service of such notice and complaint, excepting as herein provided. Rules of practice and procedure not otherwise provided for in this act may be prescribed by the commission."

The department of public service, together with the divisions thereof, was abolished by the enactment of chapter 267, Laws of 1945, p. 860 (Rem. Supp. 1945, § 10459-1 *et seq.*). However, under the act, so far as the same are material here, the powers of the department of public service devolved upon the newly created department of transportation.

*State ex rel. Seattle & R. V. R. Co. v. Superior Court,* 123 Wash. 116, 212 Pac. 259, was an original proceeding to enjoin certain defendants named in a superior court action from operating jitneys on certain streets in Seattle. The trial court held that it had no jurisdiction over the subject matter of the action, for the reason that jurisdiction was vested in the then department of public works, and, in granting the petition for mandamus, this court said, p. 122:

"Even though the department of public works may have jurisdiction in addition to its exclusive jurisdiction to determine rates and service, that additional jurisdiction is not exclusive but is concurrent with the power of the court of equity."

In *State ex rel. American Telechronometer Co. v. Baker,* 164 Wash. 483, 2 P. (2d) 1099, the department of public works, after a hearing on its own motion, directed the West Coast Telephone Company to discontinue the use of the telechronometer in Everett and vicinity. Upon a writ of review, the superior court for Thurston county reversed the order, being of the opinion that the department had no jurisdiction to entertain the proceeding. This court reversed the trial court, and, after quoting from Rem. Comp. Stat., §§ 10407, 10422, and 10432, held, p. 491:

"The sections quoted grant to the department, in cases such as this, very general powers, and afford ample basis for the steps taken by the department in this proceeding, whether it be considered that the department proceeded upon a complaint or adopted the protest or complaint filed and proceeded upon its own motion."

In *State ex rel. Bohon v. Department of Public Service,* 6 Wn. (2d) 676, 108 P. (2d) 663, this court said, p. 682:

"That the department of public service is limited to the hearing and the determination of those issues only which

are raised by the pleadings, is well settled in this jurisdiction. [Citing authorities.] The procedure for such hearings is prescribed by Rem. Rev. Stat., §§ 10389, 10422, and 10423 [P.C. §§ 5580, 5607, 5608], and Rem. Rev. Stat. (Sup.), § 10424 [P.C. § 5609].

"The purpose of the rule just stated is, of course, to insure to the carriers or utilities affected full opportunity to be heard upon any matter before any ruling is made."

We are satisfied, therefore, that, in this case, although the department did not have exclusive jurisdiction, it did have jurisdiction to hear the matters complained of.

Appellants contend that respondent Washington Motor Coach Company, under the certificate granted it, is only authorized to carry passengers between Seattle and points in eastern Washington either around the north end of Lake Washington through Juanita Beach, Kirkland, Redmond, Fall City, North Bend, or over the toll bridge, direct on state road No. 2 through North Bend. They contend that any travel between Redmond and Kirkland is merely incidental to its regular route between Seattle and eastern Washington via the north end of Lake Washington; that it has no right under its certificate to initiate service between Redmond and Seattle via Kirkland, Houghton, Bellevue, and the toll bridge. (In traveling through Redmond and Kirkland via the north end of the lake, the road turns north from Kirkland through Juanita Beach. The route complained of turns south at Kirkland and continues in a southerly direction through Houghton and Bellevue to an intersection with state road No. 2 and then west over the toll bridge to Seattle.) The appellants contend that the respondent motor coach company is actually using Redmond as a terminus and is, in effect, doing what it and the appellants all petitioned the department for authority to do at the prior hearing.

On the other hand, the respondent motor coach company contends that, by virtue of the certificate granting it authority to carry passengers via the circular route around Lake Washington, it is authorized to travel from Seattle around the north end of the lake over state road No. 2-A, through Juanita Junction, Kirkland, Houghton, and Belle-

vue, to its junction with relocated state road No. 2 and thence over the toll bridge to Seattle. It contends that the two portions of the certificate give it the right to pass through every one of the points complained of.

Rem. Rev. Stat., Vol. 7A (Sup.), § 6388 [P.P.C. § 282-3], provides:

"No corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, shall engage in the business of operating as a common carrier any motor propelled vehicle for the transportation of persons, and/or, property between fixed termini or over a regular route, for compensation on any public highway in this state, except in accordance with the provisions of this act."

Section 6387 [P.P.C. § 282-1], subd. (f), provides:

"The words 'between fixed termini or over a regular route,' when used in this act, mean the termini or route between or over which any auto transportation company usually or ordinarily operates any motor-propelled vehicle, even though there may be departures from said termini or route, whether such departures be periodic or irregular. Whether or not any motor-propelled vehicle is operated by any auto transportation company 'between fixed termini or over a regular route' within the meaning of this act shall be a question of fact and the finding of the 'commission' thereon shall be final and shall not be subject to review."

In *S & S Auto Freight v. Department of Public Works,* 175 Wash. 471, 27 P. (2d) 1098, the dispute arose over the right to furnish freight service to the district immediately west of the city limits of Monroe. The *Snohomish Auto Freight Company* contended that "Monroe" was intended to mean the incorporated city of Monroe. The *S & S company* maintained that it should be construed to mean the community commonly known as Monroe, and that the incorporated city and certain adjacent territory was a social and economic unit. After quoting Rem. Rev. Stat., § 6387, subd. (f), this court said, p. 478:

"It is generally to be considered that what constitutes the 'termini' under our motor vehicle transportation act is a question of fact to be determined by the department, and its finding, in the absence of arbitrary, capricious and un-

reasonable conduct, is final. It is also manifest by the findings of the department that it was not intended either by it, or the parties, that the certificate rights of appellant should extend farther than the town of Monroe on the north; that the other points in the territory north and west of Monroe should belong to respondent. It is unimportant that the state reformatory has been located by law 'at Monroe,' and recognized by statute as being so located (Chap. 212, Laws 1927, p. 323, Rem. Rev. Stat., § 10280-1). The state penitentiary was also long ago located as 'at Walla Walla,' and generally so recognized in all subsequent legislation. However, it is not *in* but outside Walla Walla, and ships and receives much freight and express."

In *North River Transp. Co. v. Denney,* 149 Wash. 489, 271 Pac. 589, the department of public works had issued certificate No. 142 to Stedman and Weston, authorizing passenger and express service between Aberdeen and Brooklyn. Certificate No. 134, issued to W. R. Smith, authorized like service between Aberdeen and Saginaw Camp. This certificate was assigned to the North River Transportation Company. Later, the Saginaw Timber Company moved one of its camps near Brooklyn and announced that other camps would also be moved to points near Brooklyn. Thereupon, the transportation company filed a new schedule and tariff with the department providing for service and rates beyond Saginaw Spur to the location of the new logging camps. This extension of service was objected to by Stedman and Weston, and, upon notice, pleadings, and a hearing, the department made and filed findings of fact and an order against the transportation company's extending its service. The order directed it to discontinue service, except in accord with the provisions of the certificate held by it for " 'operation between the fixed termini of Aberdeen and Saginaw Camp, which latter point has been fixed as Saginaw Spur.' " Thereafter, upon writ of review proceedings, the superior court affirmed the findings and order of the department, and the transportation company appealed to this court. We said, p. 492:

"The logging camps furnished, and continue to furnish, most of the patronage to these transportation lines; and the designation of the outer terminus in the certificate to the

appellant and its predecessor as 'Saginaw *Camp*,' rather than 'Saginaw Spur,' presents the principal controversy in the case. Appellant contends that the words 'Saginaw Camp' are used in a 'generic' sense and mean the camps of the Saginaw Timber Company, although they may be moved from time to time an appreciable distance beyond Saginaw Spur.

"The use of the word 'camp,' while inappropriate, misled no one. The holder of the certificate knew it was never intended by the department that a fixed terminus over a regular route, as provided by statute, should in this case be placed miles away from a public highway, in the woods and on private property. For transportation purposes the words 'camp' and 'spur' meant the same thing. Appellant's predecessor, Smith, so understood it, as he testified. He never transported passengers or express beyond the spur. He testified that he understood that was the southeasterly terminus of his route, and, upon assigning his certificate to the appellant, its manager who made the deal was so advised. Thereafter the appellant made no pretense of transportation beyond the spur, until after the timber company moved one of its camps to Brooklyn. The evidence in the case, including written exhibits on behalf of both transportation lines, shows that the words 'camp' and 'spur' were used interchangeably, and in the oral testimony that point was sometimes spoken of as the Saginaw Crossing. The parties themselves, through all the years, have given a meaning to the words 'Saginaw Camp' as being the equivalent of 'Saginaw Spur' as the outer terminus of the certificate held by the appellant.

"The statute, Rem. Comp. Stat., § 6387, speaks of operating 'over any *public highway* in this state between fixed termini or over a regular route.' *The termini must be fixed, not ambulatory, and the route a regular one, not changeable.*" (Italics ours.)

In *State ex rel. United Auto Transp. Co. v. Department of Public Works,* 129 Wash. 5, 223 Pac. 1048, the department had issued to the appellant a certificate of necessity authorizing it to carry passengers between Camp (now Fort) Lewis and Tacoma and intermediate points. For that purpose, it was authorized to use the Pacific highway. The department had also granted a certificate to the City Transportation Company, authorizing it to carry passengers between Tacoma and Steilacoom and intermediate points,

using the Steilacoom highway. Both companies made application for a certificate to carry passengers to and from a reconstruction hospital being erected at Camp Lewis. The certificate was granted to the City Transportation Company, being the first to make the application. In affirming the superior court, which had affirmed the department's order, we said, p. 7:

"The appellant seems to contend that its original certificate of necessity allowing it to carry passengers from Tacoma to Camp Lewis should entitle it, at least by preference, to carry all persons to and from any and all points within the reservation area. But such was not the purpose of the certificate originally given to it. Camp Lewis is a definite location within the great reservation. The rights heretofore given to the appellant were to use the Pacific highway to carry passengers to and from Tacoma and Camp Lewis and intermediate points, and did not authorize or pretend to authorize any other or further service."

We also said in that case, p. 8:

"The legislature has expressly authorized the department of public works to grant these certificates of necessity and to determine and find the facts in connection therewith."

It should be borne in mind that this is not an appeal from an order of the department granting to respondent Washington Motor Coach Company, after a hearing, an extension of its rights under certificate No. 400. In cases of that kind, we have always held that the findings of the department will not be disturbed unless they show evidence of arbitrariness and a disregard of the material rights of the parties to the controversy. This is an appeal from a judgment of the court affirming an order of the department sustaining a demurrer to the complaint and petition of appellants before the department, and we are called upon to determine whether or not the complaint stated a cause of action. If the respondent company has a right, under its certificate, to carry passengers from Redmond west to Kirkland, then south through Houghton and Bellevue to the junction with relocated state road No. 2, and then west over the toll bridge to Seattle, then the demurrer should have been sustained.

It is true that respondent company has the right,

under different portions of the certificate granted to it, to carry passengers through each of the places in controversy. However, it has no right to use Redmond as a terminus. Redmond is a way station on its regular route from points in eastern Washington and then on through Kirkland and north through Juanita Beach and around the north end of Lake Washington to Seattle. The respondent company does not have a certificate granting it the right to carry passengers from Redmond west to Kirkland and then south through Houghton and Bellevue to an intersection with relocated state road No. 2 and then west over the toll bridge to Seattle.

The complaint and petition before the department stated a cause of action. The judgment of the superior court is reversed, and the cause remanded to the department, with direction to overrule the demurrer, and to conduct a hearing on appellants' complaint and petition.

MILLARD, C. J., ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

December 31, 1946. Petition for rehearing denied.