[No. 30833. Department Two. July 15, 1949.]

NORTHWEST GREYHOUND LINES, INC., *Appellant*, v. THE
DEPARTMENT OF TRANSPORTATION *et al., Respondents.*[1]

*Macbride, Matthews & Hanify,* for appellant.

*The Attorney General* and *John F. Lindberg, Assistant,*
for respondent department of transportation.

*Reilly & Cael,* for respondent Hugh M. Lawrence.

*H. C. Brodie, amicus curiae.*

[1]Reported in 207 P. (2d) 903.

SIMPSON, J.—The present proceedings involve an order of the department of transportation which denied appellant the right to operate busses between Spokane and the area below Grand Coulee dam. After the order was entered, appellant secured a writ of review from the superior court of Thurston county. After trial, the court made and entered its decree sustaining the order made by the state department.

The 1949 legislature, by enacting chapter 117, Laws of 1949, created a public service commission and abolished the department of transportation. The act, which took effect April 1, 1949, provided that the duties of the department of transportation should be transferred to the public service commission. As a result of the passage of the act, commissioners Owen Clarke and Raymond W. Clifford were appointed, and counsel then stipulated that the public service commission and its members just named be substituted as respondents in the place of the department of transportation and its director. The stipulation was approved by order of this court.

A description of the area and the routes of travel surrounding and adjacent to the Coulee dam site is necessary to an understanding of this controversy. One of the main highways of eastern Washington, known as the Sunset highway, extends from Spokane in a westerly direction to the city of Wilbur, thence southwest through Almira to a point just west of Coulee City, from which latter point the road branches, one branch going south to Soap Lake, southwesterly to Ephrata and a short distance beyond, and then to points west. The other road extends almost due west to Waterville, and points beyond. From Almira, a road which we shall call road No. 2, extends north, and then northwesterly to the town of Grand Coulee, and thence to Mason City, or, as it is now known, Coulee Dam. From Wilbur, a road, to which we shall refer as No. 4, extends to Republic. Three miles north of Wilbur, a road, to be known in this opinion as No. 4-C, branches off in a westerly direction and intercepts road No. 2 at a point eleven miles north of Almira. Farther to the west, a road extends from Coulee City north to Grand Coulee.

The approximate mileage between the points to which we have referred is: Spokane to Wilbur—66 miles; Wilbur to Almira—11 miles; Almira to Coulee City—22 miles; Almira to Grand Coulee—22 miles; Grand Coulee to Coulee Dam, or Mason City—2½ miles. Road No. 4-C is about 15 miles in length.

Grand Coulee is an incorporated town situated at the top of the canyon in which the Coulee dam exists. Coulee Dam is located on both sides of the Columbia river below the dam. It is made up of what was originally known as Engineers Town on the west side of the river, and Mason City on the east side of the river. It is not incorporated under our state laws, but is a Federal reservation.

During the summer of 1933, Mr. F. A. Banks, then, and at the present time, engineer in charge of Coulee dam, finished, on behalf of the field reclamation bureau, an inspection of the site of the Coulee dam, and, immediately after, the bureau headquarters was established at Almira. At that time, but one person lived in what is now Grand Coulee. One man then operated a ferry across the river just below the present dam, and there were but a family and two other men in the surrounding area. There was a narrow road extending down the canyon to the ferry. Grand Coulee built up first as the workers began the construction work on the dam. In 1934, Mr. Banks moved his office from Almira to Engineers Town, approximately two thousand feet below the dam.

In September, 1933, the company, then known as Washington Motor Coach Company, Inc., with others, filed applications with the department for authority to render bus service to the "*dam site.*" A hearing upon the applications was held at Wenatchee, October 30, 1933, after which the department issued an order granting the application of the company. That order, dated December 22, 1933, contains the following pertinent provisions:

"This applicant [Washington Motor Coach Company, Inc., now Northwest Greyhound Lines, Inc.] is the holder of Certificate of Public Convenience and Necessity No. 400, under which it is now operating between Wenatchee and

Spokane via Sunset Highway through Coulee City, Almira and Wilbur, and points east, and via North Central Highway through Ephrata, Soap Lake, and points east. Applicant seeks to extend its service so as to operate from Soap Lake via what is known as the 'Coulee Road', leading north and east up the Grand Coulee to Coulee City, connecting at that point with its proposed service to the *site of the Grand Coulee Dam*, and thence to Almira. The applicant intends, pending the completion of the 'Coulee Road', to operate east from Soap Lake to a point near Stratford, thence north by county road to Coulee City. From the Sunset Highway the applicant proposes to operate to the dam by two routes, from Coulee City and from Almira. . . .

"There is a present and immediate need for passenger and express service from points on the Sunset Highway and the Northern Pacific Railway to the *site of the Grand Coulee Dam*. Naturally the expenditure of sixty-three million dollars in the course of a few years in the construction of a dam will for various reasons bring a great deal of travel from all over the State. It may not be sufficient in the immediate future to afford a profitable service, but it is clearly required by public convenience and necessity. There is no service of any kind between the dam and towns on the Sunset Highway. Those desiring to get to the site must beg or buy a way in as they may. . . . There are probably about five hundred people in the vicinity of the dam site, and the number is increasing. There are a dozen or more small business places already near the site. We find that public convenience and necessity require passenger and express service from Coulee City and Almira to the Grand Coulee Dam. We find also that public convenience and necessity require passenger and express service from Ephrata to the dam via Soap Lake and Coulee City and between *the dam site* and Almira. . . .

"The Washington Motor Coach Company has filed schedules which will provide service to *the dam site* daily from Coulee City and twice a day from Almira. Too much weight cannot be given to schedules for service over a new route where the amount of travel cannot be known definitely, as in the case of an established route. *In a case of this kind schedules will necessarily be subject to adjustment in the light of experience.* However, the Washington Motor Coach Company has filed its schedules for the purpose of securing an extension of its certificate, and should be bound to provide the services described in its schedules. It will be re-

quired to furnish service *to the dam site from Coulee City and Almira.* The construction of a paved highway or highways may change the points from which service will be necessary.

"We find, therefore, that the application of the Washington Motor Coach Company for an extension of its Certificate No. 400 to extend its service so as to operate from Soap Lake via what is known as the 'Coulee Road', leading north and east up the Grand Coulee to Coulee City, connecting at that point with its proposed service to *the site of the Grand Coulee Dam,* and from there to Almira, should be granted . . .

### "Order

"WHEREFORE, IT IS ORDERED That the application of Washington Motor Coach Company, Inc., to extend its passenger and express service under its Certificate of Public Convenience and Necessity so as to operate from Soap Lake to Coulee City via what is known as the 'Coulee Road,' leading up the Grand Coulee from Soap Lake to Coulee City, and between Coulee City and the *site of the Grand Coulee Dam,* and *between the Grand Coulee Dam site and Almira,* be, and hereby is, granted, service to be rendered temporarily via Stratford."

Thereafter, the Greyhound Lines extended their services to Grand Coulee. Subsequently, a pile-supported bridge was built between Engineers Town and Mason City, and, when it was opened for traffic in January, 1935, the Greyhound Lines filed their time schedule, showing immediate commencement of service to Mason City. The department, by order No. 1958, approved the schedule, and it became effective January 14, 1935. Thereafter, and until June 15, 1936, the Greyhound Lines operated over the initial route proposed in the application made in 1933. On the above date, Greyhound Lines, by filing a tariff and time schedule, instituted a round-trip service between Spokane and Coulee Dam by way of Wilbur and highways Nos. 4, 4-C and 2. Starting July 1, 1938, the trip out of Spokane was made over the route just mentioned, and the return trip was made by way of Almira, over road No. 2.

In June, 1939, Hugh M. Lawrence purchased the Okanogan Valley Bus Lines. His certificate, No. 513, gave him authority to cover the route extending from Tonasket,

through Republic and Clark's ferry, and then via highway No. 4, to Wilbur. Subsequently, his certificate was changed, allowing him to operate over the route of Okanogan via Omak, Disautel, and Nespelem, to Grand Coulee. His bus service connected with the Greyhound Lines at that point.

January 25, 1940, Mr. Lawrence applied to the department for permission to carry his passengers all the way to Spokane, in order that his business might survive. By order M. V. No. 33285, dated April 25, 1940, the department granted the application, restricting Mr. Lawrence to a *"closed-door"* operation, with no local service between Grand Coulee and Wilbur, and Wilbur and Spokane. Following this extension to his certificate, Lawrence, on a complaint filed by the Greyhound Lines, was by order M. V. 36217, dated September 29, 1941, ordered to cease and desist from violating his certificate rights, in that he was picking up and discharging passengers in the Coulee dam area. In January, 1942, the department issued an order which amended the one to which we have just referred, stating that no local service might be rendered between Mason City and Spokane and intermediate points, or between Wilbur and Spokane and intermediate points. This amendment was agreed to by Lawrence.

July, 1941, Lawrence filed with the department an application for extension under his certificate No. 513, which, as amended by a supplemental application filed November, 1941, asked for permission to reroute his service from Republic west to Tonasket, south to Omak and Okanogan, and thence east through Nespelem and Grand Coulee to Spokane. This request was granted because of a road washout which made his original routing hazardous. This order contained a "closed-door" limitation on Lawrence between Mason City and Spokane.

Because of the war emergency condition, the department, March 17, 1942, issued general order M. V. No. 80, by which it directed that during the emergency it would give certain applicants, under definite conditions, the privilege of operating as emergency carriers. This order was undoubtedly deemed necessary to alleviate possible inconveniences

caused by the Federal government's office of defense transportation action in curtailing the use of equipment by certain carriers operating in this state.

In 1942, the office of defense transportation ordered the Greyhound Lines to stop its direct route trip from Spokane to Coulee Dam. When this occurred, complaints were filed by the Grand Coulee chamber of commerce and Grand Coulee itself, against Greyhound Lines for lack of service in that area. When this occurred, Mr. Lawrence filed with the department his application to permanently serve the Grand Coulee area.

In 1934, the department and Mr. Banks, with the knowledge and approval of the Greyhound Lines, issued a certificate to a copartnership to transfer passengers between Grand Coulee and Mason City. This certificate was canceled in 1940, and another one was issued to a Mr. Lehto for the same purpose. This service was based on an hourly service, which might be termed an interurban schedule.

By order M. V. No. 39320, dated August 3, 1943, the department found that the territory was already served by the Greyhound Lines, and that lack of service was excusable under the compulsory O. D. T. order. The department therefore denied the application of Lawrence to allow him to permanently serve the area, but did grant him the privilege of serving it in conformity with its general order M. V. No. 80.

From this order, Greyhound Lines appealed to the superior court of Thurston county. The court reversed that part of the order granting to Lawrence the privilege of operating as a war emergency carrier, and directed that judgment be entered accordingly. This judgment was entered October 11, 1944.

Following the superior court's memorandum opinion, a traffic agreement was entered into between Greyhound Lines and Mr. Lawrence, providing that he might operate under Greyhound Lines' certificate on Greyhound Lines tickets in the Coulee dam area, giving local service from the area to Spokane. That agreement, dated October 9, 1944, contained the following:

"1. *Lawrence acknowledges that Washington Motor Coach* [now Greyhound Lines] *has the sole right to operate passenger and express motor bus service between Mason City and Spokane and intermediate points* and agrees that a final judgment may forthwith be entered in said cause No. 20571 in accordance with the Memorandum Opinion filed therein, and that upon said judgment being entered Lawrence's Certificate No. 513 shall be amended so that the same shall contain the restrictions and be in the same form that said Certificate was in immediately prior to the entry of WDPS Order No. MV-39320, dated August 3, 1943, which was reversed and set aside by said court decision." (Italics ours.)

The department approved this agreement October 17, 1944. In January, 1945, the department, following the direction contained in the superior court's judgment, entered its order M. V. C. No. 19, vacating that part of its previous order which directed Mr. Lawrence to operate as a war emergency carrier.

In the latter part of 1945, or early in 1946, the office of defense transportation lifted the ban on Greyhound Lines' service to the dam area. Shortly thereafter, the Greyhound Lines filed a time schedule notifying the department it was resuming the round-trip service proscribed during the war. Mr. Lawrence protested this time schedule and applied to render the service himself. The department, by order dated April 16, 1946, suspended the Greyhound Lines time schedule, recognized the area as that served by them, but stated that their certificate did not allow them to use highways Nos. 4, 4-C and 2 from the dam to Wilbur. Two days thereafter, the department issued an order denying Mr. Lawrence's application to serve this area on the ground that it was territory served by the Greyhound Lines.

Thereafter, the Greyhound Lines rendered service to Grand Coulee and Mason City via its connection at Almira, using highway No. 2. Immediately, Lawrence filed his petition with the department for a reconsideration of the above order denying him the right to render the direct service which the Greyhound Lines had just been required to terminate— that is, the service from Mason City to Spokane

by way of highways Nos. 4, 4-C and 2. The Greyhound Lines then filed its motion with the department to dismiss Lawrence's application on the ground that Mason City and Grand Coulee were terrritories already served by their lines.

A hearing was had by the department at Grand Coulee, August 28, 1947, at which time it reconsidered all the various proceedings which we have mentioned. It was at this time that the order was made which is the basis of this litigation.

It is really difficult to ascertain the reasons for the department's change of attitude. The order contains a statement of facts, but it is so interwoven with argument and the conclusions of the writer of the departmental order that it is impossible to state here anything other than the ultimate decision made by the department.

Appellant takes the position that the department has no jurisdiction to reconsider, or to order it to show cause why a previous order should not be rescinded; that the department is limited in procedure by statute; and that Rem. Rev. Stat., § 6390 [P.P.C. § 282-7] regulates procedures in cases of this kind, and requires that a complaint be filed against the party, and that inadequate service by the carrier be shown, which was not done in this case. They take the further position that all of the previous orders and the one superior court judgment are *res judicata* against the parties here concerned in litigating the scope of the Greyhound Lines' original certificate; that the same cannot now be attacked; and that, in effect, all Mr. Lawrence is doing in this case is retrying or relitigating all the previous orders and adjudications which have been made by the department.

Respondents argue that the certificate given to Greyhound Lines never included Mason City, Engineers Town, or what is now known as Coulee Dam, and this is the first hearing upon an application to serve the town just mentioned.

Did the previous orders made by the department give the Greyhound Lines the right to carry passengers to and from

Mason City, Engineers Town, or what is now known as Coulee Dam?

Many cases have been cited by the parties to this action which, they claim, determine the conclusion to be reached. Among them are: *Chelan Transfer Co. v. Foote*, 130 Wash. 511, 228 Pac. 297; *Northern Pac. R. Co. v. Yakima-Northern Stages*, 135 Wash. 595, 238 Pac. 905; *North River Transp. Co. v. Denney*, 149 Wash. 489, 271 Pac. 589; *Pacific Northwest Traction Co. v. Department of Public Works*, 151 Wash. 659, 276 Pac. 566; *S & S Auto Freight v. Department of Public Works*, 175 Wash. 471, 27 P. (2d) 1098, and *State ex rel. North Bend Stage Line v. Department of Transp.*, 26 Wn. (2d) 485, 174 P. (2d) 516. These cases, among other things, hold that the termini of transportation companies must be fixed and that transportation must be over a regular route. However, we are not disposed to discuss the cases for the very good reason that they are not in point and do not, therefore, control our decision in this case.

The question for determination is one of fact—that is, what was the intention of the department when it granted its certificate on December 22, 1933. The order in six places in the preliminary portion mentioned the *"site of the Grand Coulee Dam."* The final portion of the order granted a certificate of public convenience and necessity to operate from Soap Lake through Coulee City *"and the site of the Grand Coulee Dam,"* and between the *"Grand Coulee Dam site"* and Almira. At that time, as we have pointed out, the dam-building project was in its infancy. No one had knowledge of, nor could one determine, the location of the cities or towns which might be built near the dam site. The area was sparsely settled and no one could foretell the number of people who would inhabit the site. The roads were not suitable for heavy traffic.

Our conclusion is that the department's certificate plainly and definitely authorized appellant company to carry passengers to and from all the settlements, now towns, which were, and now are, located near the dam area. Each

of the towns—Mason City, Engineers Town, and Grand Coulee—were within *the site of the Grand Coulee dam*. All of the actions of the department, as evidenced in its many orders exclusive of the last one, bear out this conclusion.

The department allowed the company to serve Mason City as soon as a pile-supported bridge was built. The department approved the tariff schedule in 1935. It ordered Lawrence to cease hauling passengers over the Greyhound route in 1941. In 1942, it allowed Lawrence to reroute his service to Spokane but imposed a "closed-door limitation." By order dated August 3, 1943, it found the Greyhound Lines was already serving the dam site territory. It approved a traffic agreement between Lawrence and appellant in October, 1944.

The reason for the department's change of attitude when it made its last order is not apparent. It certainly was not in keeping with a long chain of events.

 Lawrence, October 9, 1944, acknowledged that the company had the sole right to operate passenger and express motor bus service between Mason City and Spokane, and intermediate points. He is foreclosed by that admission to now claim a right to a franchise.

 Appellant has a vested right in its certificate to operate to and from the area of the dam site. *Kitsap County Transp. Co. v. Manitou Beach-Agate Pass Ferry Ass'n.*, 176 Wash. 486, 30 P. (2d) 233. That right cannot be taken away until a hearing is had, a proper order entered based upon a showing of a violation of the law relating to traffic regulations, and it is shown that the certificate holder has refused to obey the order. *State ex rel. United Auto Transp. Co. v. Department of Public Works,* 119 Wash. 381, 206 Pac. 21.

The record in this case does not disclose a charge of the violation of legal requirements. For the reasons given, it follows that the judgment of the trial court was incorrect.

The judgment of the trial court is reversed, with instructions to render a new judgment directing the department to vacate its order M. V. C. No. 199, in so far as it grants Lawrence authority to serve Coulee Dam and territory adjacent to highways 4, 4-C and 2, and in so far as it denies appel-

lant's application to improve service by operation via highways 4, 4-C and 2, and so far as it terminates appellant's service to Coulee Dam.

JEFFERS, C. J., ROBINSON, SCHWELLENBACH, and GRADY, JJ., concur.

August 26, 1949. Petition for rehearing denied.